**James Paul COLLIER, Appellant,**

v.

**The STATE of Texas.**

**No. 72,406.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1997.

Rehearing Denied Feb. 11, 1998.

Tom Schrandt, Wichita Falls, for appellant.

John W. Brasher, Assistant District Attorney, Barry L. Macha, Criminal District Attorney, Wichita Falls, Matthew Paul, State's Atty., Austin, for State.

MANSFIELD, Judge.

On April 17, 1996, a Wichita County jury found appellant, James Paul Collier, guilty of the March 14, 1995, capital murder of Gwendolyn Joy Reed.[1] See Tex. Penal Code § 19.03(a)(7)(A). At the punishment stage of trial, the jury answered the special issues in such a manner as to require the trial court to sentence appellant to death. See Article 37.071, § 2(b), (e), & (g).[2] Direct appeal to this Court was then required by law. *Id.* at § 2(h). Appellant brings four points of error in his brief to this Court. We will affirm the judgment of the trial court.

■ In point of error number one, appellant contends that the trial court violated his Fourteenth Amendment right to due process of law when it denied his pretrial motion to question the venire regarding the minimum time (40 years) a convicted capital murderer sentenced to life imprisonment must serve

before becoming eligible for parole. See Article 42.18, § 8(b)(2). Appellant, who was 48 years old at the time of trial, argues that the venire should have been informed that, if convicted and sentenced to life imprisonment, he "would probably not live long enough to ever be eligible for parole." Appellant claims this information was relevant to the jury's consideration of the special punishment issue concerning his future dangerousness. See Article 37.071, § 2(b)(1).[3] Appellant cites *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), in support of his argument.

■ A trial court commits error if it prohibits defense counsel from asking proper *voir dire* questions. *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex.Crim.App.1991), cert. denied, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). A question is "proper" if it seeks to discover a venireperson's views on an issue applicable to the case. *Id.* at 794. An appellate court must review the trial court's ruling under an abuse of discretion standard. *Id.* at 793.

■ We have held repeatedly that parole is not an issue applicable to a capital murder case and, therefore, that the trial court does not err in disallowing *voir dire* questions concerning parole. See, *e.g., Eldridge v. State*, 940 S.W.2d 646, 651 (Tex.Crim.App. 1996); *Morris v. State*, 940 S.W.2d 610, 613 (Tex.Crim.App.1996). "As to future dangerousness, we have held that in deciding whether a defendant poses a continuing threat to society, a jury considers not only free society, but also prison society. Because the length of [a defendant's] incarceration does not reduce or increase his future dangerousness, it is not relevant to that issue." *Morris v. State*, 940 S.W.2d at 613.

Appellant's reliance upon *Simmons* is misplaced. In that case, a majority of the Unit-

---

1. The jury also found that appellant murdered Gwendolyn Reed's son, Timmy Reed, during the same criminal transaction. The murder of Timmy Reed elevated the murder of Gwendolyn Reed to a capital offense. See *Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

2. All references to articles are to those in the Texas Code of Criminal Procedure.

3. Under Article 37.071, § 2(b)(1), the jury was asked, at the punishment stage, to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

ed States Supreme Court (plurality and concurring opinions) concluded that, in capital murder cases in which the State puts the defendant's future dangerousness in free society in issue and the only available alternative sentence to death is life imprisonment without the possibility of parole, the defendant must be allowed to inform the capital sentencing jury that he is parole ineligible. The Court's conclusion was grounded on the defendant's due process right to meet the State's case against him. However, it is now settled that "the underlying rationale ... in *Simmons* ... is inapplicable to Texas jurisprudence." *Smith v. State*, 898 S.W.2d 838, 850 n. 17 (Tex.Crim.App.) (plurality op.), cert. denied, —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). "Because Texas does not allow parole information to enter the jury's deliberations, a defendant is not sentenced based upon information which he has had no opportunity to rebut or explain." *Id.* at 853. See also *Broxton v. State*, 909 S.W.2d 912, 919 (Tex.Crim.App.1995) (adopting reasoning in *Smith* plurality opinion).

In summary, we discern no abuse of discretion on the part of the trial court in its refusal to allow *voir dire* questions concerning parole. We overrule point of error number one.

■ In point of error number two, appellant complains that "[t]he trial court committed reversible error in not stopping the trial for a competency hearing to determine if [he] was competent to stand trial." Under this point, appellant argues that his pretrial conduct raised the question of his competency and that the trial court, on its own motion, should have submitted that question to a jury pursuant to Article 46.02, § 4(a).[4] As evidence of his incompetency at the time of trial, appellant points to the following pretrial occurrences: (1) a letter he sent to the trial court several months before trial, in which he asked that his court-appointed counsel be replaced and in which he stated, "I'm not in too good of mental order"; (2) a written, pretrial *Ake*[5] motion in which defense counsel requested a court-appointed psychologist to assist the defense, on the basis that there was "evidence in the defendant's background which suggest[ed] that he may suffer from a mental or emotional condition ... linked to his alleged conduct in this case"; (3) appellant's assertion, during *voir dire*, of his Sixth Amendment right to conduct his own defense;[6] (4) his subsequent claim that his standby counsel was "conspiring" against him; and, finally, (5) his complaints, all apparently minor, regarding conditions and personnel in the county jail.

The record reflects that, after (1), (2), and (3) occurred but before (4) and (5) occurred, the trial court, on its own motion and out of conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetence to stand trial.

4. Article 46.02 provides, in relevant part:

§ 1. (a) A person is incompetent to stand trial if he does not have:
(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or
(2) a rational as well as factual understanding of the proceedings against him.
(b) A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.
§ 2. (a) The issue of the defendant's incompetence to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.
(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must

§ 3. (a) At any time the issue of the defendant's incompetency to stand trial is raised, the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health or mental retardation to examine the defendant with regard to his competency to stand trial and to testify at any trial or hearing on this issue.
§ 4. (a) If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial....

5. See *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

6. The trial court eventually allowed appellant to proceed *pro se* with the assistance of standby counsel.

an abundance of caution, held a pretrial, non-jury, evidentiary hearing to consider appellant's competency to stand trial and conduct his own defense. See Article 46.02, § 2(a), footnote four, *supra.* At that hearing, appellant's treating psychiatrist, Dr. Hector Decena, testified that appellant had "major depression disorder" but that he was rational, of average intelligence, and competent, within the meaning of Article 46.02, § 1, to stand trial. See Article 46.02, § 1(a), footnote four, *supra.* Appellant's two trial counsel also stated that they believed him to be legally competent. No other evidence was presented. At the conclusion of the hearing, the trial court found appellant competent.

■ Article 46.02, § 2, requires the trial court to conduct a non-jury hearing—a section 2 hearing—on whether to hold a jury trial on the defendant's competency "if evidence of the defendant's incompetency is brought to the attention of the court from any source." See G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* § 26.54 (1995).[7] A section 2 hearing is required only if the evidence brought to the judge's attention is such as to raise a *bona fide* doubt in the judge's mind as to the defendant's competency to stand trial. *Johnson v. State*, 564 S.W.2d 707, 710 (Tex.Crim. App.1977) (op. on reh'g), overruled on other grounds, *Williams v. State*, 663 S.W.2d 832 (Tex.Crim.App.1984). In general, a *bona fide* doubt is raised, so as to require a section 2 hearing, only if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant. *Mata v. State*, 632 S.W.2d 355, 359 (Tex.Crim.App.1982). The evidence to which appellant points was insufficient to raise a *bona fide* doubt; therefore, the trial court was not required to hold a section 2 hearing, much less submit the question of appellant's competency to a jury.

■ Under this same point of error, appellant also argues that the trial court erred in failing to appoint a "disinterested expert," under Article 46.02, § 3(a), to examine him with regard to his competency to stand trial. See Article 46.02, § 3(a), footnote four, *supra.* Again, however, we discern no error. Article 46.02, § 3(a), allows a trial judge to appoint a disinterested expert *if* there is evidence which raises the issue of appellant's incompetency. *Leyva v. State*, 552 S.W.2d 158, 160–161 (Tex.Crim.App.1977). Appellant has not directed our attention to any such evidence in the record. We overrule point of error number two.

■ In point of error number three, appellant, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), contends that "[t]he trial court committed reversible error [in] allowing [him] to represent himself." Appellant's argument under this point of error is vague, at best, but he appears to be arguing that there was insufficient evidence before the trial court showing that his waiver of his Sixth Amendment right to counsel at trial was knowing, intelligent, and voluntary.

■ The Sixth and Fourteenth Amendments guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished for any felony. *Faretta v. California*, 422 U.S. at 807–808, 95 S.Ct. at 2527. Those amendments also guarantee that any such defendant may dispense with counsel and make his own defense. *Id.* at 818–820, 95 S.Ct. at 2533. Such a decision, to be constitutionally effective, must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Godinez v. Moran*, 509 U.S. 389, 400–401, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993); *Faretta v. California*, 422 U.S. at 834–836, 95 S.Ct. at 2541; see also Tex.Code Crim. Proc. art.

7. In a comprehensive analysis of Article 46.02, Professors Dix and Dawson argue that

section 2(a) [of Article 46.02] implicitly requires a section 2 hearing whenever section 2(b) would require such a hearing "during the trial." No possible reason exists why the legislature might have intended the criteria to differ. Whether a section 2 hearing is required

pretrial on the court's own motion, therefore, must be determined on the basis of the standard developed for use during trial. If that standard is met, a section 2 hearing must be held pretrial.
G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* § 26.54 at 720 (1995). We agree.

1.051. The decision to waive counsel and proceed *pro se* is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation.[8] *Faretta v. California,* 422 U.S. at 834–836, 95 S.Ct. at 2541. The decision is made "voluntarily" if it is uncoerced. *Godinez v. Moran,* 509 U.S. at 401 n. 12, 113 S.Ct. at 2687 n. 12.

The record reflects that, before the trial court granted appellant's request to proceed *pro se,* it first elicited from him the fact that he had a general equivalency degree (G.E.D.), i.e., the equivalent of a high school diploma. It then explained to him that, because of his indigence, he had the right to have counsel appointed to represent him. The court also explained to him that there were technical rules of evidence and procedure that applied at trial, that he would not be granted any special consideration with respect to those rules, and that as a result he might be disadvantaged both at trial and in any appeal that might follow. The trial court further explained the charges against appellant, the fact that lesser included offenses might be submitted to the jury, and the possible range of punishment. Finally, the record reflects that the trial court tried repeatedly to impress upon appellant the extreme gravity of his request to proceed *pro se* and the likelihood that it was a serious mistake. On this record, then, we cannot say that appellant's decision to proceed *pro se* was anything less than knowing and intelligent. Nor can we find anything in the record indicating that appellant's decision was anything less than voluntary. We therefore overrule point of error number three.

■ Finally, in point of error number four, appellant, citing *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), argues that his Fifth Amendment right against compelled self-incrimination was violated when Dr. Decena testified at the pretrial competency hearing. Appellant argues that Dr. Decena's testimony was "tainted" because "he did not warn the appellant

about the right to remain silent." We need not address this point of error, however, because no objection to Dr. Decena's testimony was lodged below. See Tex.R.App. Proc. 33.1(a). We overrule point of error number four.

Having found no reversible error, we AFFIRM the judgment of the trial court.

BAIRD, J., not participating.

OVERSTREET, Judge, concurring and dissenting.

I dissent to the majority's holding on appellant's first point of error. Appellant claims error in not allowing him to discuss the mandatory 40–year parole eligibility law during voir dire. He points out that since he was 48 years of age, he would not have become eligible for parole on a life sentence until he was 88 years old. The fact that he would not be eligible for parole until such elderly age is unquestionably relevant to his future dangerousness. Surely no one would dispute that being incarcerated until such an advanced age is certainly a legitimate consideration in answering the future dangerousness special issue.

I continue to dissent to the majority's treatment of this issue. *See, e.g., Smith v. State,* 898 S.W.2d 838 (Tex.Cr.App.1995)(plurality opinion), *cert. denied,* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Morris v. State,* 940 S.W.2d 610 (Tex.Cr.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2461, 138 L.Ed.2d 218 (1997). As I discussed in some detail in my dissent to *Rhoades v. State,* 934 S.W.2d 113, 131–44 (Tex.Cr.App. 1996), in light of the United States Supreme Court's holding in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) and appellant's advanced age upon parole eligibility, I believe that the United States Constitution's guarantees of due process required appellant's jury be informed of the forty year parole eligibility law.

I also note that four members of the United States Supreme Court have recently com-

---

8. The record must reflect that the trial court thoroughly admonished the defendant. *Faretta v. California,* 422 U.S. at 834–836, 95 S.Ct. at

2541; *Blankenship v. State,* 673 S.W.2d 578, 583 (Tex.Crim.App.1984).

mented upon the "[p]erverse[ness]" of our death penalty scheme not letting the jury know when the defendant will become eligible for parole if he is not sentenced to death. *Brown v. Texas*, —— U.S. ——, 118 S.Ct. 355, 139 L.Ed.2d 276 (1997). I likewise find rather perverse this Court's continued approval of keeping jurors ignorant and uninformed of such a critical legal fact when making life and death decisions as to whether the death penalty will be assessed. Capital jurors deserve to be so informed so that they can make an informed decision. Hopefully a majority of this Court will soon realize this; before the Supreme Court explicitly informs us via a myriad of our opinions being reversed.

I respectfully dissent to the majority's discussion and holding as to point of error one. Otherwise, I concur in the disposition of all the other points.