# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============

## NO. 03-00-00069-CR

===============

**LaFrance K. Yarbrough, Appellant**

**v.**

**The State of Texas, Appellee**

===================================================================

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 0993932, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

===================================================================

Appellant LaFrance K. Yarbrough was convicted by a jury of the offense of delivery of a controlled substance, namely, cocaine, in the amount of less than one gram. *See* Tex. Health & Safety Code, Ann. § 481.112(1)(a) (West Supp. 2000). The jury found appellant had been previously convicted of two prior felony convictions as alleged and assessed his punishment at twenty years' imprisonment. *See* Tex. Penal Code Ann. § 12.42(a)(2) (West Supp. 2000).

## Issues

Appellant advances two issues as follows:

Issue One: Whether appellant's decision to represent himself was knowingly, intelligently, and competently made [as required by][1] the Sixth and Fourteenth Amendments to the United States Constitution.

---

[1] Added to clarify the issue as stated by appellant and in accordance with the argument advanced in his appellate brief.

Issue Two:  Whether trial court erred in allowing appellant to represent himself at trial.

The two issues are interrelated and shall be considered together.  We will affirm.

## Facts Concerning The Offense

The sufficiency of the evidence to sustain the conviction for constructive delivery of cocaine of less than one gram is not challenged.  Suffice it to say, the record reflects overwhelming evidence of appellant's guilt.  Austin Police Officer Kenneth Connor was working as an undercover agent on April 6, 1999 in the "Craigwood/MLK area" of east Austin.  Officer Connor was dressed in mufti and was driving an unmarked automobile with a video camera.  Connor related that in the afternoon of the day in question, appellant hollered at him.  Connor stopped his vehicle and then pulled up close to appellant.  When appellant asked Connor what he wanted, Connor replied in street language, "a 20," meaning a rock of cocaine.  A young man, later identified as Trent Yarbrough, appellant's son, approached the vehicle.  Appellant instructed Trent to give Connor "a 20," which Trent did in exchange for $20 from Connor.  The video-tape introduced into evidence confirmed most of Officer Connor's testimony.  The chain of custody of the substance obtained by Officer Connor was established.  The Austin Police lab chemist testified that the substance was crack cocaine weighing 0.09 grams.

## The Right to Self-Representation

Appellant's two issues present *Faretta v. California*, 422 U.S. 806 (1975), questions.  To be constitutionally effective, the decision to represent one's self must be made (1)

competently, (2) knowingly and intelligently, and (3) voluntarily. *See Godinez v. Moran*, 509 U.S. 389, 400-01 (1993); *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The decision to waive counsel and proceed pro se is made knowingly and intelligently "if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." *Collier,* 959 S.W.2d at 626 (citing *Faretta,* 422 U.S. at 834-36). "The decision is made 'voluntarily' if it is uncoerced." *Id.* Moreover, a defendant's choice of self-representation is not involuntary because of his dissatisfaction with his court-appointed counsel. *See Barnes v. State,* 921 S.W.2d 881, 882 (Tex. App.–Austin 1996, pet. ref'd).

An accused, in order to competently and intelligently invoke his Sixth Amendment right to represent himself, should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. While the choice of self-representation must be knowingly and intelligently made, it need not be wise. Indeed, an accused must be permitted to conduct his own defense, even to his detriment, if it is an informed decision. *See Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989).

> [T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself. In *Faretta v. California*, 442 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), we held that a defendant choosing self-representation must do so "competently and intelligently," *id.*, at 835, 95 S.Ct., at 2541, but we made it clear that the defendant's "technical legal knowledge" is "not relevant" to the determination whether he is competent to waive his right to counsel, *id.*, at 836, 95 S.Ct., at 2541, and we emphasized that although the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored," *id.*,

at 834, 95 S. Ct. at 2541. Thus, while "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," *ibid.*, a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation.

*Godinez*, 509 U.S. at 399-400.

When an accused asserts his right to self-representation, a trial court need follow no "formula questioning" or particular "script" to assure the court that a defendant is asserting this right with his eyes open. *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). The only requirement is that the record "contain[s] proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make 'an assessment of his knowing exercise of the right to defend himself.'" *Id. See also Halliburton v. State,* 928 S.W.2d 650, 652 (Tex. App.–San Antonio 1996, pet. ref'd).

"In the end, however, a defendant must be allowed to represent himself 'if he truly wants to do so.' *Farretta*, supra, 422 U.S. at 817, 95 S. Ct. at 2532." *Blankenship v. State*, 673 S.W.2d 578, 584 (Tex. Crim. App. 1984).

**Background - Exercise of the Right**

Appellant was arrested on April 20, 1999. Counsel was appointed for him on April 26, 1999. The first indictment was returned on July 26, 1999. Appellant was reindicted on August 24, 1999. On September 26, 1999, appellant filed a pro se motion for substitution of appointed counsel claiming lack of communication, a one-time jail visit, and failure of counsel to apply "himself to seeking the truth." The motion was denied. On November 4, 1999, during a pretrial hearing, appellant requested the right to represent himself and in response to the trial

court's inquiry, acknowledged that he knew "the dangers of doing that." The trial court pointed out that the number of prior convictions alleged (seven at that time) indicated that appellant was facing a long time in prison and that self-representation was "a very dangerous thing to do." The trial court asked appellant "to sleep on it" and "think long and hard" before insisting on self-representation because it was a "big, big, big risk." Appellant was told that his court-appointed counsel was an experienced attorney who knew the rules and knew how to select a jury. On November 12, 1999, the trial court again inquired into appellant's desire and determined that appellant understood the charge against him and the range of punishment in view of the indictment's allegations; that appellant had communicated with his attorney about the offense and the facts behind it; that appellant was forty-two years old, had graduated from high school, and had taken college courses while he was in the military for twelve years; that later he worked at Pizza Hut and Brake Check, and had his own business for six months; that he was competent and did not have "delusions or anything"; that in prison he had seen a psychiatrist for depression and anxiety attacks; and that he was on medication, and "all those problems have been medically taken care of."

Appellant told the court that he was having a communication problem with his court-appointed counsel; that he had been searching in law books for cases similar to his; that it "just would get too complicated" for his attorney to read "the thoughts coming out of my mind" and ask the proper questions; and that he could ask the questions in a clear manner. Appellant denied that he wanted to represent himself in order to get a lighter sentence or arouse sympathy in the jurors' minds. He denied coercion or being forced to request self-representation.

5

Appellant briefly outlined the trial procedure for the trial court but acknowledged he had little knowledge of the rules of evidence. Appellant assured the trial court that he knew he would have to follow the rules of law if he acted as his own counsel. He stated that he would feel better if the case was in his hands. Appellant told the trial court that he had had counsel at the time of his prior convictions.

At this point, the trial court advised appellant of his right to counsel, which would have to be waived if appellant wanted to proceed pro se. Appellant then executed a written waiver of the right to counsel. *See* Tex. Code Crim. Proc. Ann. art. 1.051(g) (West Supp. 2000). The trial court informed appellant that he could withdraw the waiver at any time. In response to appellant's request for "co-counsel," the trial court designated court-appointed counsel as stand-by counsel who would act in an advisory capacity and explain courtroom procedure and rules of evidence when requested. Counsel was instructed and agreed to do legal research for appellant. The trial court then ordered the jail authorities to make legal research material available to appellant. Again, appellant was warned of the "bad results" that normally followed self-representation and was told that he would be facing a trained and experienced prosecutor. Appellant persisted in asserting his right to self-representation.

The trial court ordered that the State's file be made available to appellant as well as the juvenile file on his son, Trent. The video-tape was to be shown to appellant a second time. In addition, the trial court ordered another chemical analysis of the substance by a different agency at the request of appellant, and appointed an investigator for appellant.

## Appellant's Argument

Appellant argues that neither his decision to waive the right to counsel nor to represent himself were intelligently and knowingly made, and thus, it was error for the trial court to accede to his decisions. His claims concerning these matters are intertwined and somewhat difficult to untangle.

Appellant had taken college courses, served in the military for twelve years, and at one time operated his own business. He made clear to the court that he wanted to abandon his right to appointed counsel and represent himself. The appellant executed a written waiver of counsel in accordance with article 1.051(g) stating in part that he understood his right as an indigent to have appointed counsel and requesting his right to proceed without counsel. The record is clear that appellant, with prior courtroom experience represented by counsel, voluntarily, knowingly, and intelligently waived his known right to counsel in his quest for self-representation. No error is shown in permitting appellant to waive his right to counsel.

We now focus upon whether appellant was properly advised of the dangers and disadvantages of self-representation. Appellant does not deny he wanted and requested the right to represent himself. No particular admonishments, "script," or litany of questions is required for a trial court to follow to assure that a defendant is asserting his right to self-representation with his eyes open. *Burgess*, 816 S.W.2d at 428. The record is clear, without reiteration, that proper admonishments were given concerning pro se representation and sufficient inquiries were made of appellant so that the trial court could make an assessment of appellant's knowing exercise of his constitutional right of self-representation.

7

**Contentions to the Contrary**

Appellant, however, advances contentions to the contrary. We shall consider these, but not necessarily in the order urged by appellant. First, we turn to appellant's claims that the trial court failed to discuss defenses to the offense charged in the indictment and to discuss possible mitigating circumstances. Appellant relies upon *Blankenship*, 673 S.W.2d at 583 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948)). *Von Moltke* involved a federal habeas corpus proceeding following a guilty plea based on claims of mistaken advice from the FBI and entry of the plea without the assistance of counsel or an understanding waiver of the right to counsel. There, the court indicated that a waiver of the right to counsel must be made by the defendant with an apprehension of the nature of the offense, range of punishment, and "possible defenses to the charges and circumstances in mitigation thereof." *Von Moltke*, 332 U.S. at 723. The right to self-representation was not involved.

If the *Blankenship* opinion can be read as requiring the trial court to inform the accused, who has asserted his right of self-representation, of possible defenses and mitigating circumstances, we believe that the interpretation is overbroad on practical and reliability grounds in view of the trial court's position. The trial court cannot be the legal advisor to either the State or the defense. In most cases, the trial court will not know the facts of the case and could not, properly or improperly, advise the defendant of all possible defenses or suggest mitigating circumstances. Moreover, appellant has not claimed or shown that there were possible defenses or mitigating circumstances of which he should have been informed by the trial court. No harm is shown.

Appellant's other contentions are that (1) there was a lack of consultation time (between appellant and his counsel) before and during the trial; (2) there was a failure to provide appellant with access to a law library; and (3) there was a failure to provide adequate time to prepare a defense. Appellant's ability to represent himself at trial has no bearing on his competence to choose self-representation and is, of course, not relevant to the issues presented on appeal. Nonetheless, we will discuss the contentions.

First, appellant urges that he and his attorney did not have sufficient time to consult before and during trial. This contention seems to be based on appellant's own statement during the pretrial hearing on November 12, 1999, that he had consulted with his then-appointed counsel "very briefly." After appellant exercised his constitutional right of self-representation, he became his own lawyer. Appellant's "during trial" argument seems to have little foundation. Appellant is obviously referring to his stand-by counsel. An accused has no absolute right to hybrid representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *Scarbrough*, 777 S.W.2d at 92; *Landers v. State*, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). A trial court may, in its discretion, however, permit both counsel and accused to jointly participate in the case. *See Webb v. State*, 533 S.W.2d 780, 784 n.2 (Tex. Crim. App. 1976); 41 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure*, § 24.33 at 577 (Texas Practice 1995) (hereinafter *Dix).* In the instance case, the trial court in its discretion appointed stand-by counsel to assist appellant if he should seek such help. *See McKaskle*, 465 U.S. at 170; *Scarbrough*, 777 S.W.2d at 92; *Dix* § 24.34 at 578. This was done at appellant's request. If it be appellant's contention that "during trial" he did not have sufficient time to consult with stand-by counsel, he has failed

9

to point out where in the record he requested time to consult with counsel and that his request was refused. *See* Tex. R. App. P. 38.1(h). Appellant has not cited any authorities to support his claim. We find no merit in this contention.

Next, appellant contends that there was a failure to provide him access to a law library. The exercise of appellant's right to self-representation was not conditioned upon this matter. *Cf. Scarbrough*, 777 S.W.2d at 93. We are not directed to any part of the record where an objection or request was made on the basis now urged. No authorities are cited, and no showing is made how this contention bears on the issues presented. *See* Tex. R. App. P. 38.1(h). Appellant was incarcerated, and the trial court entered an order that legal research material be made available to him. Stand-by counsel was instructed and agreed to do legal research upon appellant's request.

Still further, appellant contends that he "did not have enough time to learn the law, understand the rules and procedures and prepare a defense."[2] Appellant does not tell us how much time would have been required for him to "learn the law" or even what defense he had to urge. Further, appellant does not explain why he, with the advice of his stand-by counsel, did not file a motion for continuance based on the grounds now advanced. This and the other points of error are all without merit.

---

[2] The trial court is not obligated to assess a defendant's technical legal knowledge, and such knowledge is not relevant to an assessment of his knowing exercise of the right to represent himself. *See Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. 1980).

The trial court repeatedly tried to impress upon appellant the extreme gravity of his request to proceed pro se and the likelihood that it was a serious mistake. Under the record before us, appellant affirmatively waived this right to counsel and voluntarily decided to represent himself competently, intelligently, and knowingly after being fully advised of the dangers and disadvantages of self-representation. The trial court did not err in allowing appellant to proceed pro se. After the exercise of appellant's constitutional right, the careful trial court took many steps to insure appellant a fair trial.

Appellant's two issues are overruled. The judgment is affirmed.


 

John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion[*]

Affirmed

Filed: October 12, 2000

Do Not Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).