ACCEPTED
06-15-00049-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/10/2015 9:48:29 PM
DEBBIE AUTREY
CLERK

NO. 06-15-00049-CR

IN THE COURT OF APPEALS, 6th DISTRICT
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
7/13/2015 8:08:00 AM
DEBBIE AUTREY
Clerk

-----------------------------------------------

KELLY RAY TADLOCK,

Appellant,

VS.

THE STATE OF TEXAS,

Appellee,

-----------------------------------------------

Appealed from No. 1424225
the 8th District Court Hopkins County, Texas

-----------------------------------------------

**BRIEF OF DEFENDANT**

-----------------------------------------------

FOR THE DEFENDANT

FRANK R. HUGHES
Attorney at Law
P. O. Box 8145
Greenville, Texas 75404
State Bar No.:  10236500

**<u>ORAL ARGUMENT IS NOT REQUESTED</u>**

# NAMES OF ALL PARTIES

Appellant certifies, pursuant to T.R.C.P.38.1(a), that the following is a complete list of the names of all the parties and all persons otherwise interested in the outcome of this case:

APPELLANT:  KELLY RAY TADLOCK

APPELLANT'S COUNSEL:  FRANK R. HUGHES of Greenville, Texas;

FRANK R. HUGHES
P. O. BOX 8145
Greenville, TEXAS 75404
903.456.2703

APPELLEE:  THE STATE OF TEXAS

APPELLEE'S COUNSEL:

Will Ramsay
110 Main St.
Sulphur Springs, TX 75482
Phone: (903) 885-0641

## SUBJECT INDEX

                                                                     Page

NAMES OF ALL PARTIES ...................................          2

REQUEST FOR ORAL ARGUMENT ............................          Title

SUBJECT INDEX ……………………………………….          3, 4

INDEX OF AUTHORITIES ...................................          5,6

STATEMENT OF THE CASE ................................          7,8

ISSUES PRESENTED/ POINTS OF ERROR NOS. 1-2.............          9

STATEMENT OF FACTS.....................................          10

SUMMARY OF ARGUMENT....................................          11

ARGUMENT AND AUTHORITIES IN SUPPORT OF

     POINT OF ERROR NO. 1 .............................          11-16

ARGUMENT AND AUTHORITIES IN SUPPORT OF

     POINT OF ERROR NO. 2.............................          17-25

PRAYER .................................................          26

CERTIFICATE OF SERVICE ...............................        26, 27

CERTIFICATE OF WORD COUNT                                     27

# INDEX OF AUTHORITIES

**CASES CITED:**

Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)
(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979));　　　　11

*Casey v. State,* 924 S.W.2d 946, 949 (Tex.Crim.App.1996)　　　　18, 24

*Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997)　　　　18

Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App.-Texarkana 2010,
pet. ref'd)　　　　11
(citing Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))

Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)　　　　12
(citing Jackson, 443 U.S. at 318–19)

Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)　　　　12

*Moore v. State,* 999 S.W.2d 385, 395 (Tex.Crim.App.1999),
*cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000)　　　　19

Reeves v. State, 06-00-00103; 46 S.W.3d 397 (Tex.App.—Texarkana 2001)　17

White v. State, 06-13-00110-CR　　　　11

STATUTES

TEX. CODE CRIM. PROC. ANN. art. 46.02, § 1A(a) (Vernon Supp. 2001)   17

TEX. CODE CRIM. PROC. ANN. art. 46.02, §1A(b) (Vernon Supp. 2001)   17

TEX. CODE CRIM. PROC.ANN. art. 42.07(2) (Vernon Supp. 2001);          18

TEX. CODE CRIM. PROC. ANN. art. 46.02, § 2(b) (Vernon 1979)          18

NO. 06-15-00049-CR

IN THE COURT OF APPEALS, 6th DISTRICT
TEXARKANA, TEXAS

-----------------------------------------------

KELLY RAY TADLOCK,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee,

-----------------------------------------------
Appealed from No. 1424225
the 8th District Court Hopkins County, Texas
-----------------------------------------------
**BRIEF OF DEFENDANT**
-----------------------------------------

TO THE HONORABLE JUSTICES OF THE SIXTH COURT OF APPEALS:

COMES NOW, KELLY RAY TADLOCK, Defendant, through his attorney and files this Brief in his Appeal. Pursuant to the Texas Rules of Appellate Procedure, references to the record, which consists of the Court's Record, in 1

volume and the Reporter's Record, in 10 Volumes. They will be noted in parentheses as (Cr_) if in the Court's Record: (Rr_) in the Reporter's Record;

## STATEMENT OF THE CASE

On 08/01/2014, the Defendant, Kelly Ray Tadlock was arrested, charged and indicted twice for INDECENCY W/CHILD SEXUAL CONTACT, each alleging separate individual sisters, referred to as CW A and CW S, in Sulphur Springs, Hopkins County, Texas.(Cr10)  On 17 December 2014 the Defendant entered a plea of guilty, after admonitions, and a PSI was ordered. (RrV4)  A problem developed when the Defendant apparently told the PSI officer that he was not guilty of the charged offense (RrV5p6) that he was "scared of a jury, and felt pressured by his trial attorney, and didn't know how he could prove his innocence."  The Judge instructed the PSI officer to cease the interview.  On 31 December 2014 after questioning by the Judge, the court refused to accept a plea of guilty.

Jury was waived, and trial to the Court began on February 3, 2015 (RrV7p7) the

Defendant was found guilty on one charge, involving CW A but not guilty on the

second CW S, a second PSI was ordered, the Defendant was then sentenced to

twenty years.  Appellant was taken into custody.  Notice of Appeal was filed on

March 3, 2015(Ctr133).  The Court's Record was timely filed; a Request for

Extension of Time to file Brief, was filed; and granted making the brief due 6 July

2015;  this brief is being filed on 10 July 2015, along with a Motion for Late

Filing, from the Court's errors in the conduct of the trial the defendant appeals.

## ISSUES PRESENTED-POINTS OF ERROR

ISSUE 1: THE VERDICT IS AGAINST THE GREAT WEIGHT OF THE EVIDENCE

ISSUE 2: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER *SUA SPONTE* A PSYCHIATRIC EXAMINATION OF THE DEFENDANT TO DETERMINE IF THE ASSORTMENT OF DRUGS THE DEFENDANT WAS TAKING AFFECTED HIS ABILITY TO HAVE SUFFICIENT MENS REA IN A SEXUAL CONTACT CASE and WHETHER HE WAS COMPETENT TO PROCEED FOLLOWING THE REJECTION OF THE INITIAL PLEA OF GUILTY AND CANCELLATION OF THE PRE-SENTENCE INVESTIGATION REPORT

STATEMENT OF FACTS

The Defendant is a step uncle to the CWS and her sister CWA (RrV7p43). On July 15, 2014 the girl's mother left them with him, to babysit while she went to work; when she returned she was told by both CWS and younger sister CWA that the defendant had been talking about sex to both sisters; and had touched them both through their clothes, the day before (RrV7p53,52p22-16). Mom called the Defendant who denied touching even talking about sex to them; (RrV7p). Mom took the girls to her mother's house where they repeated their allegations to Cathy Tadlock, the Grand mother, and Carter Tadlock, stepfather of Mom and Father of Defendant (RrV7p57L22-25),. The family was uncertain as to what to do next, S, the youngest Complaining Witness told them to call the police (RrV), which they did, she also testified she got to watch TV at her Grand Mother's.-TV shows her Mom wouldn't permit. Officer Jason Reneau was the responding officer, took a cursory statement and left a form for Mom to complete, telling her that she would be contacted (RrV7). She was contacted and arrangements were made to have the

girls interviewed at the closest CAC, in Texarkana, following the meeting with a fully qualified professional- the decision was made to file the instant charges and arrest the Defendant. He was taken into custody where he remained until he was released on a PR bond following a plea that was later abandoned.

## SUMMARY OF THE ARGUMENT

Defendant's complaints are of the Sufficiency of the Evidence and the Trial Court relying on his own training to make a decision concerning the Defendant's mental acuity, rather than order a psychiatric examination.

## POINT OF ERROR NO. 1- THE VERDICT IS AGAINST THE GREAT WEIGHT OF THE EVIDENCE

### ARGUMENT AND AUTHORITIES
As this court said recently in White v. State, 06-13-00110-CR

"In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the trier of fact's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a

reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)

(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield v. State, 305

S.W.3d 859, 863 (Tex. App.-Texarkana 2010, pet. ref'd) (citing Clayton v. State,

235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency in

light of the Brooks opinion, while giving deference to the responsibility of the trier

of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." Hooper v. State, 214

S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).

APPLYING THE LAW TO THE FACTS:

Defendant had been a very good trusted friend of the family during the

forced absence of the Step Father James York, (RrV7L12,13).  The mother of both

complaining witnesses.  Kristina York, Mom, had known him since she was 16,

and considered him like a brother, which he was, a step brother with a close

relationship. (RrV7p68L12-20); he had been at the house for two nights before the

first telling of the A story, Mom and girls drove him home on the day following the

incident (RrV7p77L18-24) and it was only after this short trip that A told her story for the first time. He was a frequent visitor to the family home of the girls and their Mom, Kristina York (RrV7p71L1-17). To the extent that he had his laundry washed there. (RrV7p48L1-10). Mom had left the girls with him on other occasions with no apparent improper activity. (RrV7p73L23-24).

On 15 July 2014, Mom came home, took Defendant to his home, and upon returning to her home CWS and CWA told her that Uncle Kelly had begun talking about sex with them. (RrV7p50L21-23). CW A told her Mom that Uncle Kelly was talking about it, and also about Mom and her husband and Uncle Kelly and his girlfriend, her Aunt Kay. And that he touched her vagina and made her touch his penis, even pulling her hand over to him and forcing a touching. And that it had occurred on 14 July 2014.

CW S, followed her sister's lead and added that it had happened a month before, too. (RrV7p51,52). S and A began to argue over what and when it had happened and when while outcry Mom was talking to them about it. When asked

14

on cross examination Mom explained that the girls said Defendant talked about her, her husband James York and also about Defendant and his former partner, Aunt Kay . (RrV7p80L1-7); Mom's testimony,

```
        Q.    And was that about marriage, or was that
 about sex?
        A.    They didn't say.  That's all I got out of
 them.  I didn't ask them any further.
```

Mom then called the Defendant and asked about what had happened, he said instantly, that he did not do anything (RrV7p58L15, 16).  Mom called her mother about it and arranged to take the girls over to the house her mother shared with the father of the Defendant. (RrV7p57).  She, accompanied by the girls, drove over to Defendant's apartment shortly after the conversation. They delivered a blanket Defendant had left at her home, along with retrieving some dishes he had taken to his place after a July 4th celebration.  This happened AFTER the outcry to Mom. (RrV7p59L1-4).

Defendant told Mom that he had talked about marriage with the CW S.

15

There was no discussion of touching, and Mom indicated she wasn't sure what she was going to do about calling the police. . (RrV7p59L21-25, p60L1-12). Mom then took girls and went to her Mother's house where the story was retold to Carter and Cathy Tadlock, father of defendant, step grandfather of the CWA and his wife, mother of CW's Mom. Following the tell, there was conversation of what to do next and CW A said call the police. .(RrV7p60L16-24).

The Defendant denied that he had ever touched either of the complainants inappropriately (RrV8p43L7-8). Under cross examination he explained the presence of a morning erection, and its being noticed by CW A (RrV8p48, 49) that he took her off his lap, and told her that he should not discuss boy, girl parts and sex with them, that was better discussed by their Mom. And that he and CW S had talked with him about marriage. His testimony was consistent with his explanation to his brother. (RrV7p114L11-19 ).

## SUMMARY POINT OF ERROR 1

The girls were arguing over what happened during the original outcry given to

themother; when asked about what else was discussed, Mom was unsure saying that the conversation may have been about sex or marriage, she doesn't know, because that was all she could get out of them. The family was unsure how to proceed is proven by their actions. They apparently waited for several hours before even contacting the police. The girls had much time to get their stories straight between the initial tell to their Mom, during which they argued, then to the natural Grandmother and Step-Grandfather. And finally to the CAC interviewer. CW S couldn't remember at trial, resulting in a finding of not guilty by the court, however; CW A, was again calm and had no trouble in reciting her story as if coached or well rehearsed. A simple story told by a young girl. One need only read or watch "The Crucible" to understand. NO complaints by anyone before. He had been offered and agreed to a very good, fair "deal"; so beneficial to him that it remained to be seen if Judge would have even approved it:

But, at the time it was very fair; his lawyer agreed he should take it. Yet he didn't.

ISSUE 2 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER *SUA SPONTE* A PSYCHIATRIC EXAMINATION OF THE DEFENDANT TO DETERMINE IF THE ASSORTMENT OF DRUGS HE WAS TAKING ON A CONSTANT BASIS AFFECTED HIS ABILITY TO HAVE SUFFICIENT MENS REA IN A SEXUAL CONTACT CASE and WHETHER HE WAS COMPETENT TO PROCEED FOLLOWING THE REJECTION OF THE CONTINUATION OF THE PRE-SENTENCE INVESTIGATION REPORT

As this court said in, Reeves v. State, 06-00-00103; 46 S.W.3d 397 (Tex.App.—Texarkana 2001)

*"A person is incompetent to stand trial if she does not have (1) sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against her.* TEX. CODE CRIM. PROC. ANN. art. 46.02, § 1A(a) (Vernon Supp. 2001). A defendant is presumed to be legally competent unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46.02, §1A(b) (Vernon Supp. 2001).

Further, a defendant must be competent at the time of her sentencing. TEX. CODE CRIM. PROC.ANN. art. 42.07(2) (Vernon Supp. 2001); *Casey v. State,* 924 S.W.2d 946, 949 (Tex.Crim.App.1996). During any part of the proceeding, evidence of a defendant's incompetency may be brought to the trial court's attention from any source. TEX. CODE CRIM. PROC. ANN. art. 46.02, § 2(b) (Vernon 1979). When evidence of incompetency during the proceeding is produced, the court must conduct an inquiry, referred to as a "Section 2(b) inquiry" (outside the presence of a jury) to determine whether there is evidence to support a finding of incompetency to stand trial. *Id.* Such an inquiry is required only if the evidence brought to the trial court's attention is such as to raise a "bona fide" doubt in the trial court's mind as to the defendant's competency. *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997). In general, a "bona fide" doubt is raised only if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by

19

the defendant. *Id.* Prior hospitalization and treatment for depression do not *per se* warrant the trial court's holding of a competency hearing. *Moore v. State,* 999 S.W.2d 385, 395 (Tex.Crim.App.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). *When the trial court holds a Section 2(b) hearing and any evidence (i.e., a quantity more than none or a scintilla) is presented that could rationally lead to a determination of incompetency, and regardless of evidence showing competency, the trial court must impanel a separate jury to determine the defendant's* competency to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46.02, § 4(a) (Vernon Supp. 2001); *Moore,* 999 S.W.2d at 393."

APPLYING FACTS TO THE LAW:

As the trial court stated, from his vantage point on the bench, the Defendant had consulted with his attorney at the time of entering his initial plea of guilty.

And the Defendant pled guilty after considerable admonitions, from the court. (RrV4p).

Then as the Defendant, purportedly stated, that he was not *really* guilty that he didn't want to go to prison, felt pressured by his attorney, and didn't see how he could prove his innocence: these statements were made at the pre-sentence interview the very next morning after the plea. (RrV4p5) Absolutely begs the question, how could he see how he could prove it with the mood of law enforcement and the public today?

On 31 December 2014, the court had been informed that the Defendant again was intending to enter a plea of guilty (RrV4p) . When questioned by the Judge about his prior change of heart, he responded that he was conflicted, and the court said

```
   But I simply can't accept a plea of
guilty from somebody who maintains that they're only
 doing it to avoid the possibility of adverse
 consequences.
                 THE DEFENDANT:  I'm not just --
I'm
```

not guilty -- I -- I believe that if the girls say that I violated them in some way, then I must have.

THE COURT: Okay. And I want you to know I appreciate that. I don't know what's going on in your mind. That is insufficient for me to support a plea of guilty. Okay? That's insufficient. And so what I'm going to do is set the matter for trial, and we'll be set for trial on February 5 -- no -- Monday, February 2. (RrV4p16)


At the time of this exchange the court was aware of the Defendant's legal drug usage, the questioning about illegal drugs at the CWA family home was denied;  and again made the decision that he announced at the time of the original plea, he was a mental health care professional, and

THE COURT: Okay. Do you need a chair?

THE DEFENDANT: (Nods.)

Page 13

THE COURT: Would you please get him a chair.

(Defendant seated in chair at bench.)

MR. LOYD: Judge, you understand that one of the -- and I'm not intending to interrupt, but

one of the medications that he is on is obviously for anxiety.

THE COURT:  Which medication?

MR. LOYD:  And it appears to me that --

THE DEFENDANT:  I'm overwhelmingly anxiety right now.

THE COURT:  Say it again?

THE DEFENDANT:  My anxiety level is through the roof right now, Your Honor.

THE COURT:  Okay.

THE DEFENDANT:  In my heart of hearts --

MR. LOYD:  Wait.

THE DEFENDANT:  -- I believe that.

THE COURT:  Well, Mr. Tadlock, here's -- you've told me -- and I've -- I began to see you shake and tremble.  I got concerned about your safety standing, which is why I got you a chair.  And I've been told that you're on -- what do you take

Page 14

for anxiety?

THE DEFENDANT:  I'm on hydroxyzine right now three times a day.

THE COURT:  Is that a generic form of what?  I'm not familiar with that.

THE DEFENDANT:  I'm not sure what the

generic form is.

THE COURT: But it's an antianxiety medication, much like Clonazepam?

THE DEFENDANT: Yeah, something like that.

THE COURT: Okay. And you take that on a regular basis, not as needed?

THE DEFENDANT: Three times a day.

THE COURT: Okay.

THE DEFENDANT: Cymbalta three times a day for acute chronic depression.

THE COURT: Right.

THE DEFENDANT: High blood pressure pill, cholesterol pill; gabapentin, which is a generic; Neurontin for my nervous system; Ambien to help me sleep.

THE COURT: Right.

THE DEFENDANT: Amitriptyline as an antianxiety and sleep aid; Symbicort for my breathing

Page 15

because I've had asthma, emphysema, COPD, and chronic bronchitis.

THE COURT: Okay. Well, again -- and I'll make the same statement, having worked in the

field for a long time, I don't see anything about your mental status that would render you what the law would call incompetent to stand trial.  There's not even the mere suggestion.  It's never been suggested to me, and it's clear that a person can be on a great deal of medication and still participate in their defense, which we need.


This Court in Reeves, infra, said, "We review a trial court's decision that the evidence at a Section 2(b) hearing did not raise the issue for submission to a jury by *viewing the evidence in the light most favorable to the party with the burden of securing the finding, disregarding contrary evidence and inferences. Casey,* 924 S.W.2d at 948 n. 4. Viewing the above evidence in the light most favorable to Reeves' position, we conclude that the trial court did not err in failing to conduct a competency hearing. There was no testimony regarding Reeves' present ability to consult with her lawyer with a reasonable degree of rational understanding

or whether she had a rational as well as factual understanding of the proceedings against her. There was evidence regarding her drug addiction and a suicide attempt, but this evidence did not reflect on her ability to understand or participate in the proceedings on that day."

In the instant case, the Defendant obviously did not understand or participate in the decision making process with his attorney. This was the second attempt by the Defendant to enter a plea of guilty, after discussing his options with his attorney. The Court should have *Sua Sponte* ordered a mental examination of the Defendant to determine how great the influence of the plethora of medications he was taking was having on the Defendant's ability to understand and participate in the proceeding. Or fully understand or remember what did happen? He says if the girls say I did, I must have?

## **PRAYER**

Wherefore, Defendant prays this court reverse the judgment of the trial court

and order the case dismissed or grant a new trial, and for such other relief to which

he may be entitled.

Respectfully submitted,

___/s/_Frank R. Hughes_
FRANK R. HUGHES
Attorney at Law
P. O. Box 8145
Greenville, Texas 75404
(903)456-2703
State Bar No.: 10236500
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2015, a true and correct copy of the foregoing

document was mailed all counsel of record, set out below.

/s/Frank R. Hughes
FRANK R. HUGHES

Will Ramsay,
District Attorney 8th Judicial District
110 Main St.
Sulphur Springs, TX 75482

27

wramsay@hopkinscountytx.org

Certificate of number of words

There are 3922 words in this document

/s/Frank R Hughes
Frank R. Hughes