Opinion issued March 20, 2003






 
 


 



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00094-CR




WILLIAM LESTER RICE, JR., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 857604




MEMORANDUM OPINION

          Appellant, William Lester Rice, Jr., was charged by indictment with burglary
of a habitation. A jury found appellant guilty, found two enhancement paragraphs to
be true, and assessed punishment at 30 years’ confinement. 
          In addressing appellant’s seven points of error, we address whether the trial
court erred in (1) allowing appellant to represent himself at trial, (2) failing to
suppress out-of-court and in-court identifications of appellant, (3) failing to grant
appellant’s motion to suppress evidence, (4) failing to discharge the jury panel after
appellant’s Batson


 challenge, and (5) finding the evidence legally and factually
sufficient to support appellant’s conviction.
          We affirm.
Background
          On September 27, 2000, while she was away from home, Laandrea Hunter’s
house was burglarized. Hunter’s neighbor, Patricia Arseno, was outside her home
when she observed appellant walking from Hunter’s yard, carrying an orange
electrical cord and another large object covered by a sheet. Arseno and appellant
looked at each other for a couple of minutes and then appellant walked away. 
          When Hunter returned home that day, she observed that the back door was
kicked in and wires were strewn across the house. Hunter noticed that a satellite box,
a VCR, and two leather coats were missing. After the police arrived, Hunter and the
officer walked into the back yard. Hunter then realized that the storage shed had been
burglarized and discovered that lawn mowers, a weed-eater, a moped, a bicycle, and
yard equipment were missing. Hunter was acquainted with appellant, who had
previously done odd jobs for Hunter’s husband. 
          After learning that Arseno had seen someone coming from her home on the day
of the burglary, Hunter contacted the police and provided them with the new
information. Officer Timothy Porche conducted an investigation and subsequently
showed Arseno a photo spread. Arseno identified appellant in the photo spread as the
man she saw leaving Hunter’s home on the day of the burglary. Officer Porche,
pursuant to an outstanding parole warrant, went to appellant’s home to arrest him. 
While searching the house for appellant, Officer Porche noticed, in plain view,
several items matching the description of those taken from Hunter’s home. Porche
seized the items, which Hunter later identified as items which had been stolen from
her home.
Procedural History
          Appellant’s first trial commenced on August 7, 2001. Appellant was
represented by appointed counsel at the first trial. After conducting a hearing on
appellant’s motion to suppress evidence and motion to suppress identification, the
trial court denied the motions. The trial terminated in a mistrial on August 10, 2001. 
On October 3, 2001, a hearing was conducted and appellant’s motion for self-representation was granted. A hearing was held on November 19, 2001 on
appellant’s pre-trial motions, and the second trial commenced on November 26, 2001. 
Appellant requested and received stand-by counsel to provide him with advice on the
law during his second trial. 
Self-Representation
          In his first point of error, appellant asserts that the trial court erred in permitting
appellant to represent himself at trial. Appellant contends that the record indicates
that appellant did not understand criminal law and procedure adequately to represent
himself. Appellant’s counsel asserts that, during appellant’s hearing on self-representation, appellant did not “appear to understand that he would have a right of
cross-examination at his second trial” and did not “appear to understand the rules
regarding criminal discovery.” 
          The Sixth and Fourteenth Amendments guarantee the right to assistance of
counsel, as well as the right to waive counsel and represent one’s self. Faretta v.
California, 422 U.S. 806, 807-08, 818-20, 95 S. Ct. 2525, 2527-28, 2533 (1975);
Hatten v. State, 71 S.W.3d 332, 333 (Tex. Crim. App. 2002). A criminal defendant’s
waiver of the right to counsel and decision of self-representation must be made
“knowingly and intelligently,” and the defendant should be warned of the “dangers
and disadvantages” accompanying such waiver. Faretta, 422 U.S. at 835; 95 S. Ct.
at 2541; Hatten, 71 S.W.3d at 333. Such a decision should also be made competently
and voluntarily. Faretta, 422 U.S. at 834-36, 95 S. Ct. at 2540-41; Collier v. State,
959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The decision to waive counsel and
proceed pro se is made “knowingly and intelligently” if it is made with a full
understanding of the right to counsel, which is being abandoned, as well as the
dangers and disadvantages of self-representation. Collier, 959 S.W.2d at 626. The
decision is made voluntarily if it is uncoerced. Id. The competence that is required
of a defendant seeking to waive his right to counsel is the competence to waive the
right, not the competence to represent one’s self. Godinez v. Moran, 509 U.S. 389,
399, 113 S. Ct. 2680, 2687 (1993). The defendant’s “technical legal knowledge” is
“not relevant” to the determination whether he is competent to waive his right to
counsel. Faretta, 422 U.S. at 836, 95 S. Ct. at 2541. 
          Here, the record reflects that, before the trial court granted appellant’s request
to proceed pro se, the court questioned appellant regarding his education and
discovered that he had a general equivalency degree and had attended a Microsoft
certified engineering course at Rice University. The trial court instructed appellant
that he would have to follow the rules of evidence and procedure and that he would
receive no special treatment. Appellant was provided written Faretta warnings


 and
was asked to sign a waiver of court appointed counsel. After reviewing the
document, appellant asked several questions, and the trial court explained that
appellant was charged with burglary of a habitation. Appellant responded that he
understood the charge, as well as the range of punishment. A discussion took place
regarding discovery; the court informed appellant that his previous attorney, Hayes,
could provide most of the documents that appellant had requested, that some of the
documents were not discoverable pre-trial, and that a hearing could be set for any
other documents he might still need. Throughout the hearing, the trial court
questioned appellant numerous times as to whether he still wanted to represent
himself. Appellant consistently responded that he still wanted to proceed pro se. At
the conclusion of the hearing, appellant signed the Faretta warnings, waiving his
right to counsel.
          On this record, we do not find anything to indicate that appellant’s decision to
proceed pro se was anything less than knowing and intelligent. Nor can we find
anything in the record indicating that appellant’s decision to represent himself was
not voluntary.
          This situation is similar to Collier. 959 S.W.2d 621. In Collier, the court held
that the trial court did not err in granting the appellant’s request to proceed pro se. 
Id. at 626. The trial court had questioned appellant regarding his education,
explained his right to have appointed counsel, explained that the rules of evidence
and procedure applied at trial and that he would receive no special consideration,
explained the charges against appellant, and repeatedly impressed upon appellant the
gravity of his request and the likelihood that it was a serious mistake. Id. 
          Because the competence required in this situation is the competence to waive
the right to counsel, not the competence to represent himself, we find nothing in the
record to indicate appellant was not competent to waive the right. Godinez, 509 U.S.
at 399, 113 S. Ct. at 2687. The defendant’s “technical legal knowledge” is “not
relevant” to the determination whether he is competent to waive his right to counsel. 
Faretta, 422 U.S. at 836, 95 S. Ct. at 2541.
          We overrule appellant’s first point of error.
Motions to Suppress
Standard of Review
          In reviewing the trial court’s ruling on the motion to suppress, we apply a
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). We give almost total deference to the trial court’s determination of
historical facts, while we conduct a de novo review of the trial court’s application of
the law to those facts. Id. During a motion to suppress hearing, the trial court is the
sole trier of fact; accordingly, the trial judge may choose to believe or disbelieve all
or any part of a witness’s testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000); King v. State, 35 S.W.3d 740, 742 (Tex. App.—Houston [1st Dist.] 2000,
no pet.). When, as here, no findings of fact are filed, we must view the evidence in
the light most favorable to the ruling and sustain the decision if it is correct on any
applicable theory of the law. Ross, 32 S.W.3d at 855-56; King, 35 S.W.3d at 742. 
Suppression of Out-of-Court and In-Court Identifications
          In his second point of error, appellant contends that the court erred in failing
to suppress the out-of-court identification of appellant by a witness because the
identification procedure was impermissibly suggestive. In his third point of error,
appellant contends that the trial court erred in failing to suppress the in-court
identification of appellant because it was the fruit of an impermissibly suggestive out-of-court identification procedure.
          A pretrial identification procedure may be so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law. Conner v. State, 67 S.W.3d 192, 200 (Tex. Crim.
App. 2001) (citing Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967 (1967) and Barley
v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995)). In determining the admissibility
of an in-court identification, we follow a two-step analysis: (1) whether the
out-of-court identification procedure was impermissibly suggestive; and, if unduly
suggestive, (2) whether that procedure gave rise to a substantial likelihood of
irreparable misidentification. Conner, 67 S.W.3d at 200 (citing Simmons v. United
States, 390 U.S. 377, 88 S. Ct. 967 (1968) and Barley, 906 S.W.2d at 33). Only if
the first prong is proved do we proceed to the second prong. In analyzing the second
prong, the following factors are considered: (1) the opportunity of the witness to view
the perpetrator at the time of the crime; (2) the witness’s degree of attention; (3) the
accuracy of the witness’s prior description of the perpetrator; (4) the level of certainty
demonstrated by the witness at the confrontation; and (5) length of time between the
crime and the confrontation. Barley, 906 S.W.2d at 34-35. An analysis under these
steps requires an examination of the totality of the circumstances surrounding the
particular case and a determination of the reliability of the identification. Conner, 67
S.W.3d at 200. Appellant must show by clear and convincing evidence that the
identification was irreparably tainted before his conviction will be reversed. Barley,
906 S.W.2d at 34. 
          Turning to the first prong of the analysis, we first note that a pretrial procedure
may be suggestive, but that does not necessarily mean it is impermissibly so. See id. 
Suggestiveness may be created by the manner in which the pre-trial identification
procedure is conducted, for example, by police pointing out the suspect or suggesting
that a suspect is included in the line-up or photo array. Id. at 33. However, a pretrial
identification procedure is not impermissibly suggestive merely because a witness
may have believed one of the individuals in the photo array was a suspect. Abney v.
State, 1 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d) (citing
Harris v. State, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992)). Suggestiveness may
also be created by the content of the line-up itself if the suspect is the only individual
closely resembling the pre-procedure description. Barley, 906 S.W.2d at 33. 
Furthermore, an individual procedure may be suggestive, or the cumulative effect of
procedures may be suggestive. Id. 
          Here, Officer Porche showed the witness, Arseno, a photo array consisting of
six subjects, including appellant. All of the subjects in the photo array had similar
characteristics with regard to race, height, and facial features, in order to ensure that
one photo did not stand out when compared to the others. Appellant complains that
Officer Porche suggested to Arseno that there was a suspect in the pictures. On
direct-examination by the State, Porche indicated that he did not do anything in a
suggestive manner or give Arseno any hints; he just explained the purpose of the
photo spread to Arseno and asked her to identify the person she saw commit the
offense. On cross-examination by the defense, Porche initially responded in the
affirmative to a question as to whether he may have suggested there was a suspect in
the pictures. However, Porche also responded to follow-up questions indicating that
he did not think that the procedure was indicative that Arseno should pick someone
from the photos and that the instructions he gave her would not have led her to
choose someone unless she could identify him as the person coming from the crime
scene.
          Additionally, Arseno testified that Officer Porche did not tell her that the
person who committed the crime was in the photos when he gave her the photo array
to review. Arseno further stated that no one made any suggestions to her to assist in
picking appellant out of the photo array, and that she was absolutely positive that
appellant was the person she had seen coming from Hunter’s house. 
          We find that the out-of-court identification procedure was not impermissibly
suggestive. Therefore, the trial court did not abuse its discretion in refusing to
suppress evidence of the out-of-court identification procedure. 
          Having determined that no impermissibly suggestive procedure was utilized,
we need not evaluate whether the procedure created a substantial likelihood of
misidentification. In re G.A.T., 16 S.W.3d 818, 827 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied). We find that the trial court did not err in refusing to
suppress the in-court identification. 
          We overrule appellant’s second and third points of error. 
Motion to Suppress Evidence
          In his fourth point of error, appellant contends that the court erred in failing to
suppress evidence seized from appellant’s home. Appellant asserts that the evidence
was seized outside an area within a valid search incident to arrest, thus constituting
an unreasonable search and seizure.
          The evidence that appellant argued should be suppressed was seized when
Officer Porche executed an outstanding blue warrant


 for appellant. Officer Porche
testified that, while executing the warrant, and searching the house for appellant, who
was subsequently found hiding in the attic, Porche observed items, in plain view,
matching the description of those stolen from Hunter’s home.
          The Fourth Amendment protects against unreasonable searches and seizures.
U.S. Const. Amend. IV; Walter v. State, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000).
Seizing contraband or other evidence of a crime in plain view does not run afoul of
the Fourth Amendment. Walter, 28 S.W.3d at 541. The “plain view” doctrine
requires that (1) law enforcement officials have the right to be where they are, and (2)
it be immediately apparent that the item seized constitutes evidence, that is, there is
a probable cause to associate the item with criminal activity. Id. In determining
whether the officer had a right to be where he was, the Supreme Court requires that
“the officer did not violate the Fourth Amendment in arriving at the place from which
the evidence could be plainly viewed.” Id. 
          A valid arrest warrant provides an officer authority to enter the residence of the
person named in the warrant in order to execute the warrant. Morgan v. State, 963
S.W.2d 201, 203 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing Payton v.
New York, 445 U.S. 573, 603 (1980)). Officers executing an arrest warrant must have
a “reasonable belief that the suspect resides at the place to be entered . . . and [have]
reason to believe that the suspect is present” at the time the warrant is executed. 
Morgan, 963 S.W.2d at 204. 
          Here, before going to 3513 Grassmere Street, the officers had evidence from
appellant’s driver’s license records that appellant lived there. Before entering the
house, the officers were also informed by two people outside the house that appellant
was inside the house at the time. This evidence was sufficient to provide the officers
with reasonable belief that appellant resided at the house and was present at the time
they executed the warrant. Therefore, the first element of the “plain view” doctrine
was satisfied. Officer Porche’s investigation of the burglary of Hunter’s home, his
knowledge that appellant had been identified as a suspect in the case, and his
knowledge of the description of items stolen from Hunter provided probable cause
for Porche to associate the items he saw in appellant’s home with those taken from
Hunter’s home. Therefore, we find that the second element of the “plain view”
doctrine has also been satisfied. 
          We find the seizure of evidence from appellant’s home did not violate
appellant’s right against unreasonable search and seizure.
          We overrule appellant’s fourth point of error.Batson Challenge
          In his fifth point of error, appellant contends that the court erred in failing to
discharge the jury panel pursuant to his Batson challenge. Appellant asserts that he
identified a total of 11 veniremen who were black and were struck by the State and
that the State only gave reasons for striking four of the 11 veniremen.
          The Fourteenth Amendment’s equal protection clause prohibits purposeful
racial discrimination by the State in its use of peremptory strikes. Batson, 476 U.S.
at 85, 106 S. Ct. at 1717 (1986); see also Tex. Crim. Proc. Code Ann. § 35.261(a)
(Vernon 1989). To assert a Batson challenge, the defendant must establish a prima
facie case of purposeful discrimination in the State’s use of peremptory strikes. 
Harris v. State, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992). Once the defendant
makes a prima facie showing, the burden shifts to the State to come forward with a
racially neutral explanation for challenging the jurors in question. Id. The burden to
show purposeful discrimination shifts back to the defendant to impeach or refute the
neutral explanation or show that it is merely a pretext. Salazar v. State, 795 S.W.2d
187, 192 (Tex. Crim. App. 1990). The trial court’s ruling on a Batson challenge must
not be disturbed unless it is clearly erroneous. Harris, 827 S.W.2d at 955. 
          To establish a prima facie case, a defendant must show that (1) he is a member
of a cognizable racial group, (2) the prosecutor exercised peremptory challenges to
remove from the venire members of the defendant’s race, and (3) these facts and any
other relevant circumstances raise an inference that the prosecutor used the
peremptory challenges to exclude the veniremembers on account of their race. 
Salazar, 795 S.W.2d at 193.
          A review of the record regarding appellant’s Batson challenge reveals that
appellant challenged the prosecutor with improperly striking the following
veniremen: 7, 15, 25, and 29.


 The State then provided the following racially neutral
explanations for challenging those jurors:
          1.       Venireman number 7 was a member of the defense bar.
          2.       Venireman number 15 had a prior aggravated assault conviction.
          3.       Venireman number 25 was not paying attention during the prosecutor’s
voir dire, was looking around, and did not laugh at any of his jokes. 
 
          4.       Venireman number 29 could not set aside personal feelings and the court
denied the prosecutor’s challenge for cause for this venireman.

The burden then shifted back to the defendant to impeach or refute the prosecutor’s
neutral explanation or show that it was merely a pretext. Appellant did not meet this
burden. Therefore, we do not find that the trial court erred in denying appellant’s
Batson challenge.
          We overrule appellant’s fifth point of error. 
Sufficiency of the Evidence
          In his sixth and seventh points of error, appellant challenges the legal and
factual sufficiency of the evidence. Appellant asserts that the State’s eyewitness,
Arseno, was not credible and that Arseno’s observation of appellant leaving Hunter’s
house was from too great a distance to be accurate. Appellant also contends that the
State cannot rely on an inference of guilt from the evidence seized from his property
because he claims there is no evidence that he exercised control over the property.
          A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). We note that, as the exclusive
judges of the facts, the credibility of the witnesses, and the weight to be given their
testimony, the jury may believe or disbelieve all or any part of a witness’ testimony. 
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981) (“A jury is entitled
to accept one version of the facts and reject another or reject any of a witness’s
testimony.”). 
          Under the factual sufficiency standard, we ask “whether a neutral review of all
of the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the jury’s determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.” King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). We will reverse
the fact finder’s determination only if a manifest injustice has occurred. Id. In
conducting this analysis, we may disagree with the jury’s determination, even if
probative evidence supports the verdict, but we must avoid substituting our judgment
for that of the fact finder. Id.
          A person commits the offense of burglary if, without the effective consent of
the owner, the person: (1) enters a habitation or a building (or any portion of a
building) not then open to the public, with intent to commit a felony, theft, or an
assault; . . . or (3) enters a building or habitation and commits or attempts to commit
a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02 (Vernon Supp. 2003).
          In Solis v. State, the court acknowledged a long line of cases where the court
has held that recent and unexplained “possession of all or any parts of the items taken
in a burglary is sufficient to sustain a conviction for burglary.” 792 S.W.2d 95, 98
(Tex. Crim. App. 1990). Where there is independent evidence of a burglary, recent
unexplained possession of property taken in that burglary will support an inference
of guilt. Gomez v. State, 905 S.W.2d 735, 741 (Tex. App.—Houston [14th Dist.]
1995), aff’d on other grounds, 962 S.W.2d 572 (Tex. Crim. App. 1998). Here, the
State had even more than evidence of appellant’s possession of recently stolen
property. 
          Hunter’s house was burglarized on September 27, 2000. Some of Hunter’s
stolen property was found in appellant’s home on October 5, 2000. Appellant offered
no explanation as to why Hunter’s stolen property was found in his home. In
addition, Arseno was certain that appellant was the person she saw coming out of
Hunter’s house on the day of the burglary. Arseno and appellant looked at each other
for about two minutes and then appellant left Hunter’s yard carrying items covered
with a sheet. Arseno then walked through a trail near the houses and watched
appellant as he turned on Grassmere street. Arseno testified that, although she did not
know appellant’s name, she had seen him in the neighborhood previously, particularly
about four times on Grassmere street. Independent evidence of the burglary was
presented, as well as evidence of appellant’s recent, unexplained possession of some
of the stolen property. 
          A rational jury could have found the essential elements to prove appellant
guilty of committing the burglary of Hunter’s home. As exclusive judges of the facts,
the credibility of the witnesses, and the weight to be given their testimony, the jury
was free to believe or disbelieve all or any part of a witness’s testimony. Penagraph,
623 S.W.2d at 343. After reviewing the record and all of the evidence, we do not
find that the proof of guilt is so obviously weak as to undermine confidence in the
jury’s determination, or that the proof of guilt is greatly outweighed by contrary
proof. See King, 29 S.W.3d at 563. Therefore, we find the evidence was both legally
and factually sufficient to support the verdict.
          We overrule appellant’s sixth and seventh points of error. 

Conclusion
          We affirm the judgment of the trial court. 
                                                                   
                                                        /s/  Laura C. Higley 
                                                             Justice

Panel consists of Justices Taft, Keyes, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).