# NO. 12-11-00397-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARL WADE CURRY,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Carl Wade Curry appeals his conviction of felony theft. Appellant raises two issues on appeal. We affirm.

### BACKGROUND

Appellant was indicted by a Smith County grand jury for unlawfully appropriating livestock feed with the aggregate value of $20,000 or more but less than $100,000. Appellant asserted his right to self-representation and pleaded "not guilty." The trial court appointed standby counsel.

Ultimately, a jury found Appellant guilty. Appellant pleaded true to the State's enhancement allegation, and the trial court sentenced Appellant to eighteen years of imprisonment. This appeal followed.

### JUDICIAL NOTICE

Appellant raises two issues on appeal regarding the right to self-representation and the imposition of court costs. After Appellant filed his brief, the State filed a motion for this court to take judicial notice of the record of a hearing in which Appellant appeared before the same trial court judge on a different criminal case. The State contends that judicial notice is appropriate

because (1) the trial court judge referred to proceedings from the other criminal case when Appellant invoked his right to self-representation in this case, and (2) the criminal case to which the trial court judge referred was ultimately appealed to this court. Thus, we first address whether we may take judicial notice of this hearing for the purpose of determining whether Appellant was aware of the dangers and disadvantages of proceeding to trial without an attorney when he asserted his right to self-representation in this case.

## Purpose and Court's Authority

Texas Rule of Evidence 201 governs judicial notice of adjudicative facts. *See* TEX. R. EVID. 201(a). Judicial notice is "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." BLACK'S LAW DICTIONARY 863-64 (8th ed. 2004). Facts that are susceptible to judicial notice "cannot be subject to reasonable dispute" and "must be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* TEX. R. EVID. 201(b); ***Kubosh v. State***, 241 S.W.3d 60, 64 (Tex. Crim. App. 2007) (citations omitted).

Generally, an appellate court cannot go to the record of another case for the purpose of considering testimony found there but not shown in the record of the case before it. *See* ***Fletcher v. State***, 214 S.W.3d 5, 7 (Tex. Crim. App. 2007) (citing ***Turner v. State***, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987)). This is because an appellate court may not take judicial notice of a fact that would ultimately relieve a party of its burden of proof. *See* ***Somers v. State***, 368 S.W.3d 528, 537 (Tex. Crim. App. 2012) (appellate court's judicial notice of reliability of tests "cannot serve as the sole source of support for a bare trial record"); ***Turner***, 733 S.W.2d at 223. But an appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties. ***Id.*** (citations omitted).

Judicial notice should be taken, if at all, "where [it is] necessary to avoid an unjust judgment," and it supports the integrity of the fact finder's ruling. *See* ***Watkins v. State***, 245 S.W.3d 444, 456 (Tex. Crim. App. 2008); ***Davis v. State***, 227 S.W.3d 766, 769-70 (Tex. App.— Tyler 2005, pet. granted), *aff'd*, 227 S.W.3d 733 (Tex. Crim. App. 2007). But Rule 201(d) makes judicial notice mandatory if a party requests that judicial notice be taken and supplies the court with the necessary information. *See* TEX. R. EVID. 201(d). When the matter that is requested to be judicially noticed is appealed to this court, and the record in that appeal contains transcribed court reporter's notes reflecting testimony that was judicially noticed by the trial

2

court or otherwise reflects that testimony, we will judicially notice the record of the same testimony noticed by the trial court. *See Bradley v. State*, 564 S.W.2d 727, 732 (Tex. Crim. App. 1978).

**The State's Motion**

The State asks this court to take judicial notice of the record of a hearing conducted on February 14, 2011, in trial court cause number 007-1469-09 (appellate court cause number 12-11-00139-CR) (*Curry I*). On June 13, 2011, Appellant invoked his right to self-representation in the instant case and confirmed that he had been tried in a prior criminal case before the same trial court judge in which he waived counsel and represented himself. The trial court recounted that in *Curry I*,

> [y]ou elected to waive counsel and represent yourself. We went over all the required warnings and approved your waiver of right to counsel to proceed pro se. And we appointed Mr. Loyd to be your standby counsel, under the law. And you proceeded through the jury trial in that fashion.

The following dialogue then took place:

> Trial Court: [The l]aw requires me in every case to find out if a person wants to represent themselves or not, so I'll make that inquiry of you in these two new cases, since we've covered that previously. Do you wish to have an attorney to represent you in these or do you wish to waive counsel and represent yourself again[?]
>
> Appellant: I wish to waive counsel and represent myself, Your Honor.
>
> Trial Court: I went back through all those things we talked about at those various hearings in your prior case. Just so the record is complete, that prior case cause number was 007-1469-09 [Curry I]. Your answers would be the same?
>
> Appellant: Yes, sir, that's correct.
>
> Trial Court: All right, sir. As we had previously, I'll have a waiver of right to counsel for you to execute in each of those two newest cases so that we can get that procedural requirement done.
>
> You realize that the court will appoint you standby counsel, just as we did last time; that that standby counsel, at any point, can move up to be your attorney, if you decide that you change your mind on being pro se at any point in either case. And that if you wish to hire counsel at either point, you have a right to hire a new lawyer as well, if you want a retained lawyer to represent you in each of these two new cases.

3

Appellant:    Yes, sir.

Trial Court:    Do you understand all that process?

Appellant:    Yes, sir, I do.

The State specifically requests us to take judicial notice of the "Hearing on Defendant's Waiver of Counsel," which is contained in Volume IV of the reporter's record in *Curry I*. The reporter's record was filed in this court on June 15, 2011, is the "original," and is certified as a true and correct transcription of the proceedings.

The hearings in both cases involve the same parties (the State of Texas and Appellant), address substantially similar subject matter (Appellant's invocation of his right to self-representation against felony theft charges), and contain dialogue between Appellant and the same trial judge pertaining to Appellant's invocation of his right to self-representation.[1] *See Turner*, 733 S.W.2d at 222-23. Appellant does not dispute that he was admonished in *Curry I*, and admits in a subsequent pleading that he was "admonished to pro se representation in this case."

Under the general rule, we are not permitted to take judicial notice of testimony in *Curry I* that is not included in the record of the case before us. But the State's request for judicial notice does not violate the underlying purpose of the general rule. *See generally Somers*, 368 S.W.3d at 537; *Turner*, 733 S.W.2d at 223; *see also Magic v. State*, 217 S.W.3d 66, 72 (Tex. App.—Houston 1st Dist.] 2006, no pet.) (refusing to take judicial notice of mandate of another case because it would impermissibly relieve state of its burden). Instead, the State's purpose is to provide this court with the record of a prior discussion Appellant had with the trial court that Appellant has acknowledged in this case. *See Bradley*, 564 S.W.2d at 732.

## Avoidance of Unjust Judgment

The focus of a trial court's admonishments to a defendant wishing to proceed pro se is on the defendant's knowing and intelligent assertion of his right to self-representation. *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). The trial court is charged with the responsibility of making a record that establishes the individual "who would represent himself 'knows what he is doing and his choice is made with eyes open.'" *Goffney v. State*, 843 S.W.2d

---

[1] During one of the hearings in this case, Appellant requested a reporter's record of the trial in *Curry I*. He explained that the reporter's record would help him prepare for trial in this case because there were "[a] lot of parallels, a lot of similarities between all three of those. A lot of those have the same witnesses in them, as well as a lot of the same incidents in those."

583, 585 (Tex. Crim. App. 1992) (citations omitted). Here, the trial court made a general reference to "all those things we talked about" in *Curry I* relating to Appellant's invocation of his right to self-representation. Appellant's confirmation that his answers would be the same in the second trial serves as an acknowledgment that Appellant and the trial court had previously discussed Appellant's invocation of his right to self-representation. Appellant did not dispute the existence of that dialogue when he invoked his right to self-representation in this case, nor does he contest its existence on appeal. *See* TEX. R. EVID. 201(b); *Kubosh*, 241 S.W.3d at 64. The prior dialogue between Appellant and the trial court regarding self-representation is also "capable of accurate and ready determination" by resorting to Volume IV of the reporter's record in *Curry I*. *See* TEX. R. EVID. 201(b); *Kubosh*, 241 S.W.3d at 64.

A defendant should not be allowed to assert his right to self-representation by acknowledging a trial court's prior admonishments relating to the dangers and disadvantages of self-representation and then complain on appeal that he did not proceed "with eyes open" because the trial court did not conduct a new inquiry on the assertion of his right to self-representation. *See generally United States v. Tate*, No. 12-50363, __ Fed. Appx. __, 2013 WL 3456742, at *2 (5th Cir. July 10, 2013) ("The essential inquiry is whether circumstances have sufficiently changed since the date of the *Faretta* inquiry that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel.") (quoting *United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir. 2010)).

Here, the State provided this court with Volume IV of the reporter's record from *Curry I* to show the contents of the prior discussion between the trial court and Appellant that was referenced in the present case. *See* TEX. R. EVID. 201(d). The discussion is not subject to reasonable dispute, is capable of accurate determination by referring to Volume IV of the reporter's record in *Curry I*, and provides the basis for the trial court's finding that Appellant was aware of the dangers and disadvantages of self-representation. Accordingly, we grant the State's motion for judicial notice.

## SELF-REPRESENTATION

In his first issue, Appellant contends that he was not properly admonished about the dangers and disadvantages of proceeding at trial without an attorney. As a result, he argues

5

further, his waiver was unknowingly made, amounting to the denial of his right to effective assistance of counsel.

**Applicable Law**

"In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The right to counsel is a fundamental right, and the "[c]ourts indulge every reasonable presumption against waiver and do not presume acquiescence in the loss of fundamental rights." *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (citations omitted). But if a criminal defendant elects to proceed without counsel, he has a constitutional right to do so. *See Indiana v. Edwards*, 554 U.S. 164, 170, 128 S. Ct. 2379, 2383, 171 L. Ed. 2d 345 (2008); *Faretta v. California*, 422 U.S. 806, 819-20, 95 S. Ct. 2525, 2533, 45 L. Ed. 2d 562 (1975).

Several benefits associated with the right to counsel are relinquished upon a defendant's invocation of his right to self-representation. *See id.*, 422 U.S. at 835, 95 S. Ct. at 2541; *see also Williams*, 252 S.W.3d at 356. Our inquiry does not center on a traditional waiver of counsel analysis, but on whether the defendant makes a knowing and intelligent assertion of the right to self-representation. *Johnson*, 760 S.W.2d at 278. The decision to waive counsel and proceed pro se is made knowingly and intelligently if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997). The decision is made voluntarily if it is uncoerced. *Id.*

A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (citations omitted); *Williams*, 252 S.W.3d at 356. No formulaic questioning or particular script is required in order for a trial court to assure itself that an accused who has asserted his right to self-representation does so with eyes open. *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991); *see also Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984) (questioning about age, education, background, or previous mental history not required in every instance). "When advising a defendant about the dangers and disadvantages of self-representation, the trial judge must inform the defendant that there are technical rules of evidence and procedure, and he will

not be granted any special consideration solely because he asserted his pro se rights." *Williams*, 252 S.W.3d at 356.

## Judicially Noticed Facts

Appellant's first court appearance in this case was on June 13, 2011.[2] At that time, Appellant confirmed that he appeared before the trial court judge in *Curry I*, they "went over all the required warnings," and that he wanted to represented himself again. When Appellant asserted his right to self-representation in *Curry I*, the trial court's discussion included the following dialogue:

> Court: All right, sir. And everyone has that legal right. . . . [A]nd I always tell people that tell me they want to represent themselves what they tell us in law school when they're training us as young individuals to be lawyers, is if you ever get put in a position where you have a case where you're a party and you elect to represent yourself, you have a fool for a client.
>
> Part of the reason they explain that to us is that part of the lawyer—role of the lawyer . . . in cases that go to court is to be somewhat detached, not be the one in the hot seat, whether it's a civil matter or criminal matter; and therefore, hopefully, have a better perspective and better judgments in relation to addressing the legal issues in their particular case.
>
> . . . .
>
> [T]hey just warned us it was not a very smart thing for the lawyer to elect to not go get a lawyer to represent themselves.
>
> So I share that always with people because I think it's a pretty good perspective if the scholars are telling lawyers that they shouldn't be representing themselves has, obviously, that—at least that implication if not more, for people that are not trained in the law. So, do you understand what I'm saying in that regard?
>
> Appellant: Yes, Your Honor, I do.

The trial court told Appellant that he wanted to make sure Appellant "understands that the law provides [criminal defendants] have a right to hire counsel, if they wish to," and noted that Appellant had retained counsel at one point. He also advised, "[I]f you can't afford to hire your own counsel, if you're indigent under the law, the Court system will appoint you a free

---

[2] Appellant filed his first pro se motion in this case on May 31, 2011.

lawyer for that lawyer to represent you." When the trial court asked whether Appellant wanted to "attempt to have a lawyer represent you, whether you could hire one or have one appointed for free," Appellant responded, "No sir. At this time, I do not. . . ."

Appellant had explained that he wanted to represent himself because

> I feel like my case is a very unique case. It's involved in the cattle industry. I've been in it all my life. I understand the mechanics of it, how it works. Pretty much the industry standard of the way payments occur, the way deliveries occur, the way pick-ups occur when we're picking cattle up, as well as going and delivering cattle, say, to a rancher or wherever the cattle are going to. I'm very versed in that.
>
> I've had some experience in law. We've had some things go on within our family and within my past. And I feel experienced enough in the law. And I have access to a law book that I do use and I am able to study up on the law and about my cases. So that's—but as far as the mechanics of being able to understand how everything works within the industry that I'm involved in, I'm very knowledgeable about that.
>
> So, basically, I've been studying the law to understand the law aspect of it, versus the practicality part of the cattle business and what the case is about.

During his discussion with Appellant, the trial court noted that State's counsel was present and that Appellant was under oath, which could also be detrimental to Appellant's interest. Specifically, the trial court stated as follows:

> That's part of another danger of representing yourself is everything you do in the courtroom they have immediate knowledge of because they're here with you.
>
> And, normally, the lawyer's talking. . . . Anything the lawyer says may, typically, not be of much use to the State because the lawyer tries to be very careful about what they say that would reveal any attorney/client confidences the client has given to the lawyer.
>
> Instead, they try to focus more on the legal aspects of the case. A person that's not a lawyer may, frankly, not really realize what benefit they're giving to the State in their various statements that you make here in court. So, again, today's hearing's not any purpose for getting into the facts of your case at all. It's really centered around making sure you understand you have a right to have a lawyer represent you[.]
>
> . . . .
>
> And then, secondly, once you know that, which you've told me you already do, that you're wishing to waive any right to have an appointed counsel to represent you, for whatever reason that you have. And I understand your primary reason[.]

8

. . . .

> On the other hand, you're off into an area where your opponents will know a lot more about the legal aspects of your case than you will. And so it really becomes a function of are you really putting yourself in a better spot by electing not to have a lawyer so that you can run your own defense, whenever they have the legal knowledge that you'll be going up against.
>
> Because part of representing yourself is that the Court doesn't help you. You have to know the laws. You have to know the evidentiary rules. You have to know the procedure. All the things a lawyer would be doing for you, you have to be responsible for at that point. And, again, presumably, having a jury trial, the jury gets to watch all of us, including a defendant. They will, I suspect, think it's unusual that a person's elected to waive counsel and represent themselves.
>
> . . . .
>
> [That is] just one of those things that—I try to cover everything, not to deter you from representing yourself, but to make sure that you, in fact, understand all the nuances that are going on when cases get into courtrooms.

Upon further inquiry, Appellant told the trial court that he was forty-four years old and had undergraduate degrees in animal science and agricultural education from Texas A&M University in College Station.[3] Also, Appellant previously appeared in court on other matters, but *Curry I* was the first case in which he represented himself.

During the hearing in *Curry I*, Appellant confirmed numerous times that he was not forced to represent himself and that self-representation was his sole decision. The trial court inquired as to Appellant's knowledge of the offense in which he was charged, the punishment range, and the State's burden of proof. Appellant told the trial court that he knew he was charged with "theft of livestock, more than 10 head less than $100,000," a third degree felony with a punishment range of 2 to 10 years of imprisonment. He also acknowledged that because the State alleged a prior felony conviction in its indictment, he knew the punishment range could be elevated to a second degree felony (2 to 20 years of imprisonment) if the enhancement paragraph was found true. The trial court questioned Appellant about the State's burden of proof and explained that

---

[3] Appellant's education level was included in the PSI report in this case, which also stated that Appellant did not fail any grades and was not in any special education classes.

> I'm asking you—because one of the things that the law provides is for the State to be able to prevail in their case they have certain elements of proof they have to prove in order to establish or support a conviction.
>
> . . . .
>
> I'm supposed to . . . find out [if you] know what those elements are. Because if you do, then you do. If you don't, then it kind of shows that you don't really know what the State has to prove to convict you.

Appellant told the court that he understood what the State would be trying to prove, and stated that

> [i]f you're speaking of what I think you're speaking of, which would be who all was involved in the case, the people that was involved, who the—of course, I was, of course. The people that was involved. Well, in this case, the amount of cattle that was involved, the amount of money that was involved. The things that went on in the case that led up to the alleged crime.

The trial court asked Appellant whether he was familiar with the rules of evidence, the code of criminal procedure, and the penal code, and Appellant told him that he was familiar with them because "I have them in my law book." The trial court also told Appellant that if he testified at trial, there would be no breaks in examination and that Appellant would be required to make objections for himself. Upon further questioning, Appellant confirmed that he understood that representing himself was more than just telling his side of the story.

Finally, the court appointed a "standby lawyer," explaining that the standby lawyer would be available to answer questions, but would not be "running the case" or "making strategic decisions."

> Trial Court: [P]art of the reason that I raise all those is, really, to make sure you think them through.
>
> The law provides that you have the right to claim representation, give up that right of representation, and have the lawyer step in at any point. That's the reason I appoint the standby lawyer. Because if we're halfway through a trial, it would be fairly disruptive for a new lawyer to come in, not know what's happened up to that point, really, other than what you could quickly tell him. And then him have to pick up and carry forward to wherever the status of your case was. . . . But, again, you're the one that's in charge of the trial of the case. That's what you wish to do?
>
> Appellant: Yes, sir, it is.

10

**Analysis**

In this case, Appellant signed a written waiver of the right to counsel after he invoked his right to self-representation. The waiver states that Appellant was advised of his right to representation by counsel, the right to appointed counsel if he is indigent, and that, understanding those rights, Appellant "wish[es] to waive that right and request the court to proceed with my case without an attorney being appointed for me. I hereby waive my right to counsel." Although this case and *Curry I* were both felony theft cases with the same punishment range, the trial court did not question or admonish Appellant about the punishment range in this case.

Appellant made two acknowledgments that he was admonished "about self-representation"—during his arraignment as previously discussed and upon his filing a request for investigative expenses.[4] The record also shows that Appellant represented himself in two criminal cases prior to the commencement of trial in this case. Appellant's PSI report reflects that Appellant received a guilty verdict by a jury in Smith County and was sentenced to imprisonment for twenty years before he invoked his right to self-representation in this case.[5] The PSI report also shows that while this case was pending (and after Appellant invoked his right to self-representation), Appellant received a guilty verdict by a jury in Hardeman County and was sentenced to imprisonment for ninety-nine years.

Appellant urged several motions for continuance throughout the pendency of this case. Appellant needed testimony from *Curry I* and requested continuances in order to conduct more research to prepare for trial. During one hearing in which Appellant contended that he was not provided adequate access to the law library, the trial court explained as follows:

> But that's part of the problems of representing oneself is that a lawyer has flexible time to be able to do their own legal research.
>
> . . . .
>
> To be locked up in jail, then, just by the pure mechanism, you don't have as much flexible time to do that. Again, doesn't keep you from representing yourself. But it does impact your opportunity, I guess, to do research when you want to. Because they can't afford to let you do research when you want to.

---

[4] In his "Request for Approval of Investigative Expenses," Appellant states that he was "admonished to pro se representation in this case," and recognizes the trial court's appointment of standby counsel.

[5] The Smith County case has the same trial court cause number as *Curry I*.

At no point before, during, or after trial in this case did Appellant renounce his desire to proceed pro se and request standby counsel to represent him. Even though Appellant received a ninety-nine year sentence in Hardeman County while this case was pending, there is nothing in the record to suggest that there was such a change in circumstances that additional inquiry into Appellant's assertion of his right to counsel was necessary. *See Tate*, 2013 WL 3456742, at \*2. The trial court referenced the Hardeman County case after Appellant was found guilty, and Appellant affirmed the trial court's characterization that he "didn't do so well." But Appellant explained that the outcome of the Hardeman County case was due to the fact that he did not have enough time to prepare for trial and had not received discovery sufficiently in advance of trial. Here, all of Appellant's requests for additional time, discovery, and an investigator were granted. Appellant announced "ready" prior to the commencement of trial.

The trial court's failure to admonish Appellant about the punishment range in this case does not, by itself, require reversal. *See Smith v. State*, No. 05-03-01282, 2004 WL 1089206, at \*8 (Tex. App.—Dallas May 17, 2004, no pet.) (op. nunc pro tunc, not designated for publication) (citing *Halliburton v. State*, 928 S.W.2d 650, 652-53 (Tex. App.—San Antonio 1996, writ ref'd)). The punishment range in this case was the same as the punishment range in *Curry I* in which Appellant received a twenty year sentence. *See generally* TEX. PENAL CODE ANN. § 31.09 (West 2011), §§ 12.42, 31.03(e)(5) (West Supp. 2013). Furthermore, the punishment range was announced prior to the commencement of trial, and Appellant did not object or otherwise notify the trial court that he was unaware of the range of punishment.

Although it is preferable that a defendant be admonished of the dangers and disadvantages of self-representation in every case in which he asserts his right to self-representation, we conclude that the facts of this case show the trial court did not commit reversible error by failing to give additional admonishments. There is nothing in this record to suggest that Appellant's decision to represent himself and waive his right to counsel was not "made with eyes open." *See Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *Williams*, 252 S.W.3d at 356; *Johnson*, 760 S.W.2d at 278-79; *Blankenship*, 673 S.W.2d at 583. We also conclude that, based on the facts and circumstances of this case, Appellant's waiver of the right to counsel was uncoerced and knowingly, voluntarily, and intentionally made. *Williams*, 252 S.W.3d at 356-57; *Collier*, 959 S.W.2d at 626. Accordingly, we overrule Appellant's first issue.

12

### IMPOSITION OF COURT COSTS

In his second issue, Appellant contends that the trial court erred in imposing court costs not supported by the statutorily required bill of costs and by ordering the court costs to be withdrawn from his inmate trust account. Because the bill of costs was not included in the record, Appellant contends that he is subject to an order that violates his right to due process and has no basis in fact.

After Appellant filed his brief, the record was supplemented with a bill of costs. Appellant has not been deprived of the opportunity to file a supplemental or reply brief to challenge whether the costs in the judgment nunc pro tunc and withholding order were correctly assessed. We have received no such brief that identifies any incorrectly assessed costs.

Having compared the bill of costs with the trial court's judgment nunc pro tunc and withdrawal order, we conclude that Appellant's argument on appeal relating to the imposition of court costs is now moot. *See Black v. State*, No. 12-13-00067-CR, 2013 WL 4716195, at *4 (Tex. App.—Tyler Aug. 30, 2013, no pet.) (mem. op., not designated for publication); *Ballinger v. State*, 405 S.W.3d 346, 349 n.4 (Tex. App.—Tyler 2013, no pet.). Accordingly, we overrule Appellant's second issue.

### DISPOSITION

Having overruled both of Appellant's issues, we *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered November 21, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 21, 2013**

**NO. 12-11-00397-CR**

**CARL WADE CURRY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0415-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

# THE STATE OF TEXAS
# M A N D A T E

********************************************

**TO THE 7TH DISTRICT COURT OF SMITH COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 21st day of November, 2013 , the cause upon appeal to revise or reverse your judgment between

**CARL WADE CURRY, Appellant**

**NO. 12-11-00397-CR; Trial Court No. 007-0415-11**

Opinion by Sam Griffith, Justice.

**THE STATE OF TEXAS, Appellee**

was determined; and therein our said Court made its order in these words:

"THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all things **affirmed**, and that this decision be certified to the court below for observance."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the xx day of September, 2013.

CATHY S. LUSK, CLERK

By: _Katrina McClenny_
Chief Deputy Clerk