

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00146-CR

_____

SHARON LEE DOWNES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 349th District Court
Houston County, Texas
Trial Court No. 10CR270

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

Sharon Lee Downes was convicted of retaliation[1] by a Houston County[2] jury after she refused the appointment of counsel, chose to represent herself at trial, and failed to attend the trial after having participated in the jury selection process on the preceding day. Downes was sentenced to ten years' incarceration and was fined $5,000.00. We affirm the judgment of the trial court because (1) Downes' waiver of the right to counsel was intelligent, voluntary, knowing, and competent, and (2) the trial court did not abuse its discretion in determining that Downes voluntarily absented herself from trial.

## I.     Downes' Waiver of the Right to Counsel Was Intelligent, Voluntary, Knowing, and Competent

### A.     Knowing, Voluntary, and Intelligent Waiver

Downes initially claims that she failed to knowingly, intelligently, and voluntarily waive her right to counsel, which was "a predicating and significant factor in insuring that appropriate due process was thwarted."

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). "Those amendments also guarantee that any such defendant may dispense with counsel and make his own defense." *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim.

---

[1] TEX. PENAL CODE ANN. § 36.06 (West 2011).

[2] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

App. 1997) (citing *Faretta*, 422 U.S. at 818–20); *see Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) ("[T]he Constitution does not force a lawyer upon a defendant.").

A defendant's decision to dispense with counsel must be made "(1) competently, (2) knowingly and intelligently, and (3) voluntarily." *Collier*, 959 S.W.2d at 625 (citing *Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *Faretta*, 422 U.S. at 834–35). When a defendant asserts the right to represent herself, the trial court must admonish the defendant about the dangers and disadvantages of self-representation "so that the record will establish that [s]he knows what [s]he is doing and [her] choice is made with [her] eyes open." *Faretta*, 422 U.S. at 835 (quoting *Adams*, 317 U.S. at 279); *see* TEX. CODE CRIM. PROC. ANN. art. 1.051(g) (West Supp. 2013) (stating court "shall advise the defendant of the nature of the charges . . . and, if the defendant is proceeding to trial, the dangers and disadvantages of self-representation"). If:

> (1) a defendant clearly and unequivocally declares to a trial judge that he wants to represent himself and does not want counsel, (2) the record affirmatively shows that a defendant is literate, competent, and understanding and that he is voluntarily exercising his informed free will, and (3) the trial judge warns the defendant that he thinks it is "a mistake not to accept the assistance of counsel" and that the defendant will "be required to follow all the 'ground rules' of trial procedure," the right of self-representation cannot be denied.

*Dolph v. State*, No. 06-13-00029-CR, 2013 WL 6709943, at *1 (Tex. App.—Texarkana Dec. 20, 2013, pet. ref'd) (quoting *Faretta*, 422 U.S. at 835–36).

Downes appeared with court-appointed counsel at a pretrial hearing on August 30, 2012. At the outset of the hearing, Downes' court-appointed attorney, joined by Downes, moved the court to withdraw from representation.[3] Downes immediately indicated that she intended to

---

[3]The trial court ultimately granted the motion to withdraw.

handle the case herself and that she had already filed a motion to dismiss. On the heels of this announcement, the trial court conducted a detailed and lengthy *Faretta* inquiry. The court's inquiry revealed that Downes was forty-seven years old, had a high school diploma, and had over 200 college hours from various courses taken "through the years." The inquiry further indicated that, in the past, Downes was employed in the area of outside sales.

The trial court asked Downes if she understood that criminal litigation is complex and that having the guidance of counsel would be better than her own, unskilled efforts. Downes indicated that she understood. Downes acknowledged her basic unfamiliarity with the rules of criminal procedure, but stated that she was familiar with courtroom procedure. When asked if she was familiar with the Rules of Evidence, Downes indicated her familiarity with certain Rules. The trial court admonished that the Rules of Evidence included "a lot more" than that. Downes acknowledged that she probably did not know how to preserve error for appeal. The trial court further inquired into Downes' knowledge of the concepts of (1) lesser-included offenses, (2) range of punishment, and (3) mitigating evidence. While Downes' knowledge of these areas was limited, she indicated that she was familiar with the facts of her case, had researched her case, and had good organizational skills. The court advised Downes that "[p]eople that choose to represent themselves could be at an extreme, extreme disadvantage . . . because the state's attorney will have gone to law school . . . would have studied procedure . . . the Rules of Evidence, would have studied everything that relates to law in the case, and will have a valid law license." Downes indicated that she understood the disparity in her own level of skill in these areas and that of a person with a law license and stated that she understood that this

4

set of circumstances would place her at an extreme disadvantage. The court informed Downes that she was charged with a third degree felony, which carries a punishment range of two-to-ten years' prison time. Downes was admonished that her ignorance of the law, lack of experience, refusal to look at the big picture, and exercise of poor judgment in refusing a lawyer could result in prison time. Downes indicated that she understood all of those issues. The court told Downes that, although she could not be forced to accept the appointment of counsel, accepting the assistance of counsel was the wise decision. The trial court further warned Downes that handling the case on her own would be "extremely stupid" and "absolutely stupid." Downes acknowledged, "It's a risk. I do agree with that, and I appreciate it." The court continued its efforts to persuade Downes, stating, "You are looking at two to ten to do and looking, potentially, at another felony," to which Downes' replied, "I understand." In frustration, the court stated,

> I'm going to ask one last time. It is absolutely crazy, I think, in my mind, for you to represent yourself; however, you may do so, or the Court will appoint you a lawyer. Do you want the Court to appoint you a lawyer, or do you want to go on your own?

Downes continued in her quest to represent herself. After again indicating her strong disagreement with that decision, the court indicated that counsel would be appointed for Downes should she change her mind. The court concluded, "The Court having conducted the *Faretta* hearing as required by law, thinks it is not wise, has done everything possible to convince Ms. Downes otherwise, but the Court will authorize Ms. Downes to represent herself in a pro se capacity."

5

Later, during the same hearing, Downes presented a motion to the court. When Downes was informed that the court did not have jurisdiction to hear the motion, she stated that she was doing the best she could. At that point, the court pointed out, "That's an example of what I was telling you, you would be your own worst enemy being your own lawyer. Do you want to reconsider?" At that point, Downes agreed to accept the appointment of counsel.

The following day, Downes penned a letter to the trial court stating that she refused to work with court-appointed counsel. Downes wrote, "[I]t is not in my best interest to work with any staff on the Houston County list as I will not receive effective representation." Downes indicated that she would continue to represent herself, claiming that although she is not an attorney and does not claim to know everything, "this is a no brainer case that does not meet Texas Penal Code 36.06 requirements for prosecution, it will not go to trial, the case is frivolous hearsay, it does not even belong in Pre-School Time Out Court and I can handle it."

In a letter to her appointed counsel dated September 30, 2012,[4] Downes informed counsel that she was terminating his representation and specifically requested that counsel refrain from contacting her. Consequently, on November 6, 2012, Downes' attorney filed a motion to withdraw as counsel because Downes no longer wanted to be represented by counsel. Counsel further explained that Downes instructed him not to contact her, that she would not cooperate in the preparation of her defense, and that she instructed counsel to file a motion to withdraw.

At the hearing on the motion to withdraw, the trial court reminded Downes of the August hearing in which Downes eventually decided that she wanted court-appointed counsel to

---

[4]Although the letter is dated September 30, 2012, it includes the caption "FINAL WARNING NOTICE 10/29/12."

represent her. Downes informed the court that the court decided that for her and that she "really didn't want that." The court again advised Downes that her decision was not smart, stating, "You might be doing more harm than good." Downes continued to insist on self-representation. When Downes expressed irritation at the fact that appointed counsel filed a motion to suppress evidence on her behalf, the court explained that counsel was "trying to cover [her] backside." The court persisted in attempting to dissuade Downes from self-representation. The court stated, "I'm trying to convince you a lawyer is your best way to go to get the best representation you possibly can get." When it was apparent that Downes would not be persuaded to accept appointed counsel, the trial court appointed stand-by counsel and explained that counsel was available for legal advice during trial and was also available to step in and defend Downes at any time.

There is no question on this record, which indicates Downes rejected two court-appointed attorneys in favor of self-representation, that Downes unequivocally declared to the trial court, numerous times, her desire to represent herself. The trial court warned Downes, also numerous times, that it was unwise to refuse the assistance of counsel and that Downes would be expected to follow all applicable rules and procedures. Nevertheless, Downes contends that her poor performance during voir dire is proof that the trial court failed to ensure that the trial was conducted fairly. "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Faretta*, 422 U.S. at 834. The performance of a pro se defendant is not the standard by which we determine whether a defendant knowingly and intelligently waived the assistance of counsel.

7

Here, Downes repeatedly asserted her desire to act pro se, despite numerous warnings from the trial court of the potential negative consequences. The trial court permitted Downes to represent herself only after (1) informing her of her absolute right to appointed counsel, (2) admonishing Downes of the dangers of self-representation in light of the evidentiary and procedural rules she was required to follow, (3) confirming that Downes knew the charges against her and the range of punishment, and (4) determining that she was literate, had graduated from high school, and had attended some college. *See Collier*, 959 S.W.2d at 626. Downes confirmed that she understood the risks of self-representation and elected to proceed in the face of those risks. "Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." *Faretta*, 422 U.S. at 834. We find Downes' waiver of the right to counsel was knowing, voluntary, and intelligent.

## B. Competent Waiver

Downes further contends that the trial court failed to take her mental capacity into account when evaluating her waiver of the right to counsel. This argument is based on the premise that, although Downes was competent to stand trial, she was not mentally competent to represent herself at trial. In support of this position, Downes relies on *Indiana v. Edwards*, 554 U.S. 164 (2008), in which the United States Supreme Court considered the issue of whether the Constitution requires a state trial court to permit a mentally ill defendant, on request, to conduct his own defense at trial. Generally, "'the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent

8

himself.'" *Id.* at 172 (quoting *Godinez v. Moran*, 509 U.S. 389, 399 (1993)). The Court, however, "caution[ed] against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself." *Id*. at 175. The Court held,

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky*[5] but who still suffer from *severe mental illness* to the point where they are not competent to conduct trial proceedings by themselves.

*Id*. at 177–78 (emphasis added). The mental-illness-related limitation on the scope of the right to self-representation articulated in *Edwards* was recognized by the Texas Court of Criminal Appeals in *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010).

The trial judge is in the best position to decide whether a mentally ill defendant is competent to proceed pro se. *Edwards*, 554 U.S. at 177; *Chadwick*, 309 S.W.3d at 561. Because the issue on appeal is a mixed question of law and fact which turns on an evaluation of credibility and demeanor, we review the trial court's ruling for an abuse of discretion. *Chadwick*, 309 S.W.3d at 561. We view the evidence in the light most favorable to the trial court's ruling and will imply any findings of fact supported by the evidence and necessary to support the trial court's ruling in the absence of explicit findings. *Id*.

We recognize that Downes has a history of mental illness. The trial court acknowledged and addressed this issue at the August 2012 *Faretta* hearing. Among the items discussed was the

---

[5]*Dusky v. United States*, 362 U.S. 402 (1960) (per curiam) (defining competency to stand trial).

fact that the trial court had previously found Downes incompetent to stand trial in this case.[6]

After Downes was briefly hospitalized at the Rusk County Hospital, the trial court found Downes competent to stand trial on May 12, 2011. Over a year after that decision, at the *Faretta* hearing, Downes indicated that she was currently seeing her doctor on a regular basis and that she was taking lithium for, as Downes described it, a very mild case of bipolar disorder that is under control. Downes' description of her illness as mild and well-controlled is supported by the record, which indicates that she had the ability to communicate clearly and to conduct herself appropriately in court. "[B]ipolar disorder, standing alone, does not preclude a competent waiver of counsel without some additional showing the defendant is mentally incompetent to represent herself." *Cudjo v. State*, 345 S.W.3d 177, 187 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (affirming determination of competence to waive counsel although appellant suffered from bipolar disorder and was housed in prison mental health unit, but could communicate clearly, conduct himself appropriately, ask coherent questions, lodge objections, and articulate defenses to allegations); *but cf. Chadwick*, 309 S.W.3d at 562 (trial court did not abuse discretion in denying right to self-representation when appellant put curses on trial court, interrupted his attorney, launched into rambling monologues and personal attacks, and filed incoherent motions).

Here, the trial court interacted with Downes on several occasions after she was deemed competent to stand trial, in addition to the August *Faretta* hearing. These interactions provided the court with ample information to take "realistic account" of Downes' mental competence to

---

[6] The docket indicates that the trial court ordered a competency evaluation on January 27, 2011. Thereafter, on February 24, 2011, the trial court found Downes "not competent to stand trial at this time."

10

conduct her own defense. *See Edwards*, 554 U.S. at 177. Additionally, the trial court provided Downes with standby counsel to consult at any point before or during the trial.[7]

We must give almost total deference to the trial court's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor. Further, the trial court was in the best position to evaluate whether Downes manifested a severe mental illness that would render her incompetent to proceed pro se. *See id.*; *Chadwick*, 309 S.W.3d at 561. Construing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in impliedly finding that Downes was competent to waive counsel and proceed pro se. *See Chadwick*, 309 S.W.3d at 561.

## II.     Downes' Absence from Trial

On June 10, 2013, Downes participated in the jury selection process, the jury was empaneled and sworn, and Downes entered her plea of not guilty. Prior to adjourning for the day, the trial court instructed Downes to be present in court at 8:50 the following morning prior to the commencement of trial.

At 7:00 a.m. June 11, 2013, the trial court received an email from Downes stating that she was sick and could not make it to court. She asked that the case be postponed until the next

---

[7]Here, Downes' participation in the trial was limited to the jury selection process. To the extent Downes relies on her performance in that process to support her claim of mental incompetence, we note the trial court's observation of this process did not result in a re-evaluation of the decision to permit Downes to represent herself. The fact that Downes' performance could be described as less than effective merely reflects the fact that an untrained layperson is not typically equipped to step into the role of a trial attorney.

11

available date.[8]  The court coordinator replied to Downes' email at 7:02 a.m. stating, "Court will begin at 9:00, and you were told to be there at 8:50.  It will not be canceled."[9]

Based on Downes' representations to the trial court in the six months preceding trial that the trial was not going to happen, the trial court determined that Downes voluntarily absented herself from trial after pleading "not guilty" to the indictment.[10]  Downes was tried in absentia

---

[8]Downes' email stated,

> I am very sick.  This -- I'll be unable to make it to court this a.m.  I am really sorry.  I have been sick all night.  It's not like me to be sick.  I guess I have a stomach flu.  Have actually been sick three times since February due to stress.  I am so sorry, but I can't make it.  I can't take the heat on top of it.  My car has no AC.  I will cancel the jury for this week, sequester the jury, and we can pick this up the next available date.  It takes me two or three days to feel human again.  I don't feel human at all at this moment.  I'm going back to sleep.  I feel really rotten.  I will e-mail you later to check in.  Thanks, Sharon Downes.

[9]Standby counsel also emailed Downes and left a message on her telephone answering machine regarding attendance at trial, but received no response.

[10]The court indicated,

> [This court has] received numerous letters from Ms. Downes in the last six months.  Last week, on more than one occasion, she told me she was not coming, in writing.  She made statements the trial was not going forward, it would be fatal.  She gave me the excuse in April because of the explosion at the plant in West on I-35 -- she's coming on I-45 from Houston -- that due to the fumes, I-45 was not clear.  My coordinator called TxDOT, and there were no warnings or any cause for concern on 45.  And she did not come that day, and that was April 18th.
> She started in January saying that she was not coming.  At the end of January, I set the trial for this week, accommodating that she advised the Court she was taking college classes and asked for the court to be after this semester ended.  She has made numerous statements in court and in writing to the Court, and all of these writings are in the Court's file, the trial was not come-- was not happening, she needed dismissal, she wasn't coming, she's on the edge of threatening Ms. Sessions.
> Last week, she was extremely racial in her comments.  And the Court, pursuant to the Texas Code of Criminal Procedure 33.03, can go forward when the defendant voluntarily absents himself after pleading to the indictment or information or after the jury has been selected when the trial is before a jury.  Pursuant to Texas Code of Criminal Procedure 37.06, in a felony case, the defendant must be present when the verdict is read unless his absence is willful or voluntary.
> Based on the last six months, if not longer, Ms. Downes has stated in court and in writing the trial wasn't going to happen, I'm not coming, it's fatal.  She tried last week for a, at least, third time, to postpone with a change of venue and a motion to recuse that the Administrative Judge of the First Region ruled upon late last week.

and was arrested the following day in a hotel located approximately two-to-three hours from the Houston County courthouse.

On appeal, Downes claims the trial court abused its discretion in determining that her absence from trial was voluntary. Article 33.03 of the Texas Code of Criminal Procedure provides,

> In all prosecutions for felonies, the defendant must be personally present at the trial, . . . provided, however, that in all cases, when the defendant voluntarily absents [her]self after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). Whether the trial court erred in proceeding with the trial is reviewed under an abuse of discretion standard. *Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984). In most instances, the appellate court must determine, from hindsight, the validity of the trial court's determination that the defendant's absence was voluntary. *Id.*; *Hudson v. State*, 128 S.W.3d 367, 375–76 (Tex. App.—Texarkana 2004, no pet.). The defendant must provide evidence to refute the trial court's determination, or we will not disturb the trial court's finding. *Hudson*, 128 S.W.3d at 375–76.

As we have noted, Downes was present when the jury was selected and sworn in and when the judge recessed court for the day and announced when the trial would resume. Downes accounted for her failure to appear, but the trial court, based on information in the record, did not find this story credible. Instead, the trial court found that Downes' absence was voluntary. Here,

---

The Court in good conscience cannot say Ms. Downes is sick. The court finds that Ms. Downes is voluntarily absenting herself from today's proceedings, and we are going forward.

13

the trial court had some evidence before it to support the conclusion that Downes' absence was voluntary. *See Moore*, 670 S.W.2d at 261.

Indeed, the record reflects a pattern of Downes' delay tactics; she even boldly declared on several occasions that there would be no trial. In January 2013, Downes filed a motion to recuse the trial court judge, which was denied by Senior District Judge, Gene Knize.[11] In April 2013, Downes' case was set for a motions hearing. On the day before the scheduled hearing, Downes sent an email to the trial court asking to participate via conference call. The trial court determined that Downes was to appear in person, and this information was communicated to Downes via email correspondence on the day prior to the hearing. The following day—the date of the hearing—Downes emailed a motion for continuance (referring to same as "a quick informal motion for continuance") due to "the explosion and amonia [sic] spread in the I-45 North area." That same morning, Downes was informed that the motion for continuance was denied.[12] The docket indicates that the trial court called Downes six times at the number she provided before hearing the motion for continuance.

Downes emailed a second motion for continuance to the trial court in May 2013. This motion was likewise denied. On receipt of this denial, Downes wrote the trial court a letter indicating, "This document serves as official notice or TRIAL PROTEST by Defendant Pro Se who will not be [sic] NOT appear in court on June 10 for the trial in Petition and Protest of Cause No: 10CR270 . . . ." Downes further stated, "Trial will not be had and will be stopped if

---

[11]Downes had previously filed a motion to recuse in August 2011, which was also denied by Judge Knize.

[12]A handwritten note appears in the record: "Called Jan at TxDOT -- no advisory for I-45 -- only traffic delays on I-35."

in progress." Demonstrating her intention to stop the trial, Downes wrote, "Let me make it very clear I will not appear in court on June 10, 2013[,] to continue to be abused by the staff. I will stop any trial during the proceeding and I do mean STOP IT." Downes concluded, "CANCEL THE JURY AND WITNESSES THERE WILL BE NO TRIAL FOR CAUSE NO. 10CR270 JUNE 10, 2013."

Thereafter, Downes engaged in delaying tactics including the June 4, 2013, filing of a motion to recuse both the prosecuting attorney and the trial court.[13] On June 7, Downes emailed the trial court's docket coordinator informing her that the referenced recusal motion had been filed and asking if the motion was set for hearing on June 10 at 9:00 a.m.—the scheduled trial date. At the conclusion of this e-mail, Downes stated, "I am only appearing in court if the above items will be met or a Straight DISMISSAL with no conditions at all. I will only sign Dismissal documents and not one additional thing." Downes was informed that her recusal motion had been forwarded to the presiding judge of the First Administrative Judicial Region. Additionally, the court sent Downes the following notice on Friday, June 7: "[The] Court has set your case for trial and has ordered you to appear on Monday, June 10, 2013[,] at 9:00 a.m. to begin trial." Downes' email reply stated, among other things, "I am NOT coming unless my case is guaranteed to be dismissed because it will be a waste of my money which I do not have." Downes was then informed that the administrative law judge had "responded that jury trial shall proceed on Monday, June, 10, 2013[,] at 9:00 a.m." Downes informed the docket coordinator

---

[13]This was the third motion Downes filed to recuse the trial court.

that she had not told her family about the trial because she hoped it would go away. Downes further advised, "It needs to be dismissed."

It was against this backdrop that the trial court understandably looked askance on Downes' absence from trial due to a purported illness. Downes' standby counsel attempted to contact Downes by telephone and by email after the court received word from Downes that she would not be present for trial. Counsel received no response from Downes. The trial commenced at 9:58 a.m., almost an hour later than scheduled. When the trial concluded, the court recessed until Downes could be arrested and brought to court.[14]

Downes was located and arrested at a hotel in Webster, Texas, on June 12. The hotel address did not match Downes' home address in Liverpool, Texas. On her return to court, Downes stated that she did not have money for a hotel in Houston County and that the drive was too long for her. Downes failed to explain how she was then able to afford a hotel room in Webster, Texas, located approximately three hours (in heavy traffic conditions) from the Houston County courthouse.

Lynn Gentry, a deputy with the Houston County Sheriff's Department, testified that he transported Downes from Webster back to the Houston County courthouse on June 12. Gentry testified that Downes was in good physical condition when he picked her up. Downes did not

---

[14]On the evening of June 11, after the conclusion of the trial, Downes sent one additional email to the docket coordinator, stating that she was

> taking an EMERGENCY INDEFINATE [sic] MEDICAL LEAVE OF ABSENCE from the court . . . effective immediately. I can't do this right now I am exhausted and really physically sick. I was sick all night, & today vomiting do [sic] to exhaustion, caused by long term severe stress. I slept all day until I called you @ 4:00 pm. It wore me out getting up @ 3:00 a.m., to be in court by 9am. I will not be able to do that anymore for any reason. I WILL NOT BE IN COURT TOMORROW OR THURSDAY.

become ill on the drive to Houston County, and Gentry did not observe Downes exhibit any symptoms of illness. Downes told Gentry that she did not feel good, that she was exhausted, and that she had slept all day. Nontheless, Gentry indicated that Downes appeared to be fine with no physical ailments.

Downes testified that she had no idea that the case would be tried in her absence when she called in sick. She explained that she had no intention of inconveniencing anybody, but that she thought she should be entitled to a sick day from court. Downes explained that she slept the entire day in order to feel better. She stated that she did not go to the emergency room because it would not have helped and because she could not have gotten any rest there.[15] Downes indicated that she understood why the trial court would think she was feigning illness after Downes indicated, on several occasions, that there would be no trial, that the trial would be stopped in progress, and that Downes wanted nothing but a dismissal of her case. The trial court determined that Downes' was not hospitalized, kidnapped, threatened, or harmed; she was, instead, sleeping in her hotel room. The trial court told Downes, "[I]f you would not have sent me letters over and over 'I'm not coming,' 'This trial's not going forward,' 'It's going to be postponed,' . . . [then] what you have sent me in an e-mail saying that you were sick I would have looked on differently."

Although Downes presented evidence attempting to explain her absence, we cannot say that the evidence presented refutes the trial court's determination that her absence was voluntary. The evidence clearly reflects that Downes' stated intention was to stop the trial from taking

---

[15]The trial court asked Downes if she was competent to stand trial, and Downes again explained that she was tired. The trial court tested this question by having Downes identify the various players in her trial and define their roles.

17

place. The most recent pronouncement of such intention was only days before Downes did not appear for her trial. Although Downes claimed to be ill, she did not require medical attention, and the deputy who arrested her and brought her to the courthouse following her failure to appear for trial testified that Downes appeared to be in good physical condition and that he observed no signs of illness. Because we find no abuse of discretion, we will not disturb the trial court's finding. *See, e.g.*, *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.) (continuing trial in absence of defendant, who was hospitalized due to suicide attempt, was not abuse of discretion; defendant was present when jury was selected).[16]

## III. Conclusion

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted: May 28, 2014
Date Decided: July 2, 2014

Do Not Publish

---

[16]Downes relies on *Kerr v. State*, 83 S.W.3d 832 (Tex. App.—Texarkana 2002, no pet.), to suggest that her due process rights were violated. Kerr involved a defendant who absented himself before the jury had been selected. Under these circumstances, the trial court erred in proceeding with the trial in Kerr's absence. *Id*. at 834.